**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**STEVEN J. KANIADAKIS**

**Plaintiff,**

**v.** **Case No: _______________________**

**THE EXECUTIVE BOARDS**

**OF DIRECTORS, SAP, INC., CONCUR, INC.,** ***et al,***

**THE EXECUTIVE BOARDS**

**OF DIRECTORS, VERIZON, INC., AOL, INC.,**

**TECHCRUNCH, INC,** ***et al.***

**Defendants.**
**___________________________________/**

**COMPLAINT**
**AND WITH INJUNCTIVE RELIEF SOUGHT**

Plaintiff Steven J. Kaniadakis alleges as follows:

ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

INTRODUCTION

**1.** For Defendants engaged in intentional unauthorized and unlawful

acts of Plaintiff Kaniadakis' intellectual property including, but not limited to, the Lanham Act, the act of U.S. Trademark violation, intentionally, willfully and knowingly, made their name similar or misuse name in near resemblance to Plaintiff's U.S. Trademark so as to cause likelihood of confusion, misrepresentation, false designations of the source (origin) of the product identified in connection to the Plaintiff's intellectual property, (in the disjunctive rule of law) or as to the origin, sponsorship, or approval of Plaintiff Kaniadakis' property, or commercial activities by another person and Defendants', (in the disjunctive rule of law), or commercial activities by another person and Defendants and set forth in complaint;

**2.** For Defendants under said authorities, in the disjunctive thereof, Defendants to have likely have caused damage as Defendants are availed of engaging in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Plaintiff Kaniadakis' intellectual property or Defendants' goods, services, or commercial activities as set forth in complaint.

**3.** For Defendants' acts and actions or inactions against Plaintiff Kaniadakis despite merits of the parties' U.S. Trademark infringement

concerns and the spirit of trademark law. Described and evidenced with more particularity in the complaint.

**4.** For Defendants misrepresenting Plaintiff Kaniadakis' intellectual property, namely, Plaintiff's U.S. Patent product source, *viz.,* the act of Defendants U.S. Trademark violation, intentionally, willfully and knowingly, made their name similar or name in near resemblance to Plaintiff's U.S. Trademark, so as to cause likelihood of confusion of Plaintiff's U.S. Trademark and the identified designation of origin, the source, in connection to features, aspects, parts, elements of Plaintiff Kaniadakis' U.S. Patent description.

**5.** For Defendants unlawful acts attempting to cause culpability of at least three (3) participants (including participation by and though members having leadership roles) to become engaged with Defendants in a wrongful scheme to involve U.S. Copyright Act violations of law involving Plaintiff's United States Trademark.

**6.** For Defendants allegedly continued to be availed of engaging in acts against the rules and laws and the authorities of at least one (1) Official Office of The United States of America by and through Defendants' actions against the Plaintiff.

**7.** For Judgment against Defendants' in violation of Federal Statues alleged in complaint against Plaintiff Kaniadakis as authorized by the rules, laws and statues, including Lanham Act and according to U.S. Copyright Act violations provided in accordance to § 512 f (2) and taken in light of Title 17 USC § 502 find in favor Plaintiff Kaniadakis remedies upon this Honorable Court's findings of Defendants' intentional, willful, and knowing acts as well as other dubious sorts in complaint. Plaintiff requests This Court's rulings become a chilling effect against the present Defendants from any Defendants' acts in the future.

**8.** For Executives Boards of Directors, Defendant SAP, INC., *et al.*, (hereafter as, SAP, *et al.*) consciously breached at least one (1) contract for unknown reasons, which SAP, *et al.* agreed to carry out with Plaintiff Kaniadakis.

**9.** For Defendants' breach of contract. In an alternative, Defendants engaged certain co-Defendants participants on behalf of respective incorporations breeched at least one (1) agreement resulting in allegedly misleading and/or material silent misrepresentation of parties to complaint.

**10.** For unfair competition, bad business practices by and through

Defendants.

**11.** For allegedly engaging bad faith acts by and through Defendants.

**12.** For allegedly causing tortious interference with at least one (1) contract by and through Defendants.

**13.** For Defendants allegedly committing at least three (3) counts of silent or fraudulent misrepresentation by and through Defendants.

**14.** For Defendants allegedly causing acts in connection to cybersquatting and acting against the law relating to anti-cybersquatting. Compounding matters about 'geographic origin' (terrestrial location, Plaintiff's source) of Plaintiff Kaniadakis' property comes Defendants' cyberspace ('space') non-tangible acts in the minds of the public under said authorities and set forth in complaint. Defendants' designations of origin including sub domain name "calendar-call", in connection to Defendants' electronic link, which is false designation to Plaintiff's. Defendant's ignored cyber piracy prevention laws in our United States of America. Defendants' act caused misleading use of the registered U.S. Trademark in terms-of-art which are provided by U.S. definition, 'as part of an electronic address on the Internet', "calendar-call', **47 U.S. § 230 (f) (1).**

**15.** For Judgment against Defendants, with some Injunctive Relief Sought pursuant to **Rule 65, Fed. R. Civ. P.**

**16.** As a result of Defendants' have profited and from advertising dollars gained advantage over Plaintiff Kaniadakis.

**17.** Defendants have been given constructive Notice.

**18.** Defendants continued after said Notices to knowingly and willfully cause U.S. Trademark violations and various related wrongful, intentional, unlawful acts and actions outlined in this Complaint at the expense of Plaintiff Kaniadakis' years of painstaking work and investment.

**19.** Plaintiff alleges that Defendants have acted unlawfully on more than one count to have repeatedly violated law and engaged in actions against the rules and statues in our United States of America. Defendants have engaged in such acts extending from the time of Plaintiff's Notice. All Defendants in this scheme were opposed to abide the U.S. rule of law, even after given several Notices.

**20.** Defendants as a result have improperly and unlawfully caused gained an advantage over the Plaintiff Kaniadakis' intellectual property rights.

**21.** Defendants as a result have improperly and unlawfully caused disadvantage over the Plaintiff Kaniadakis' intellectual property rights.

**22.** Plaintiff Kaniadakis' believes that the intellectual property in this case including, U.S. Trademark registration certificates, could have an integral connection to teaching the art in Plaintiff's U.S. Patent 8,666,772, particularly to Independent Claim #15 thereof. Defendants' actions resulted in a contributory detrimental affect which could be part and parcel to U.S. Trademark records.

JURISDICTION AND VENUE

**23.** This Court has jurisdiction over this matter pursuant to the Federal Trademarks laws **("The Lanham Act of 1946"), 15 USC §§ 1051-1141, et seq., pursuant to 28 USC § 1338(a)(b)** as causes of actions arises under the unfair competition, Copyright Act **17 USC § 512 f (2)** and various Trademark **15 USC** violations, respectively. Further, This Court has supplemental jurisdiction over Plaintiff Kaniadakis' pendent, Common Law claims, and State of Florida Common Law claims, pursuant to **28 USC § 1367**.

**24.** Defendants have online presence. Therefore, interstate access to consumers and enterprise incorporations. Further, Defendants SAP, *et al.*

conducts local business as well as VERIZON, INC., *et al.*

**25.** Defendants conduct business with at least one known company in Tampa Bay area and This District *i.e.* the company called *Tech Data*, located in Clearwater, FL., its Global Head Quarters, and *CISCO*, *Microsoft's Skype* distributor. *Skype* and *CISCO* products compete with Plaintiff. Despite Plaintiff's U.S. Patent, and Plaintiff's Right to exclude infringing technologies. Each distribute to third party vendors and from *Tech Data*.

**26.** Venue is proper within the Middle District of Florida, Tampa Division, pursuant to **28 U.S.C. § 1391(b) and 1400(a)(b)**.

**IN THE INTEREST OF SPARING JUDICIAL RESOURCES**

**27.** Plaintiff's requests This Honorable Court to allow in evidence matters which could be addressed by Courts in this jurisdiction and district. As a matters In The Interest of Judicial Economy and prudence.

**28.** Plaintiff requests This Honorable Court's discretionary call on its jurisdiction for examination on material of factual case with an eye on the patent and trademark law legal case. Plaintiff's trademarks are each in a commercial branding, in description, which has been referenced in designation to the source. Namely; each trademark designation represents

practicing the art of his U.S. Patent as the source, the description in connection to products, and secondarily in a connection to his company named resources. As an entity, U.S. Patented Technology 8,666,772. Standards of Review which encompasses Common Law practices, but not limited to, The United States rules of law applied to an application with a two prong examination, two blocks including integral connection between the U.S. Trademark and U.S. Patent. With a reference to anti-compete and exclusivity rights to exclude others. In reference to the significance of Plaintiff's U.S. Trademark and in light of a U.S. Patent as a product itself, a product that the owner bears entitled Rights to promote, distribute market and, among other things, offer for sale as a product as would be the product therefrom.

THE PARTIES

**The Plaintiff**

**29.** "AMETEX" is a legal corporation duly organized and existing under the laws of the State of Florida, having its principle place of business in St. Petersburg, Florida. Ametex was developed founded in the late 1970's to early '80's. Plaintiff Kaniadakis' is founder, and he is now incorporated as its chairman.

**30.** References are made to Ametex. Therefore, this connection is set forth herein. Whereas, Plaintiff Kaniadakis' is owner of intellectual property herein. Thus, caption of this instant case is properly styled accordingly reflecting owner intellectual property relevant to this present case. Plaintiff Kaniadakis has a number of other registrations, on the records in Washington, D.C., In The U.S. Patent and Trademark Office his issued certificates, and in The Library of Congress, Copyright Office his issued certificates and dated back to around late 70's and the early 1980's. Plaintiff Kaniadakis has continued his efforts, documenting his multiple creative works including to this present year, 2017. Plaintiff Kaniadakis is not new to documenting his creative works, inventive thoughts and innovations.

**31.** Plaintiff Kaniadakis is the inventor and owner of the intellectual property, Plaintiff Kaniadakis is doing business as U.S. Patented Technology 8,666,772 and his company name is duly organized and existing under the laws of The State of Florida, having its principal business in St. Petersburg, Florida. Therefore, there exists this affiliation with Plaintiff Kaniadakis, his company, and his intellectual property, his U.S. Patent and Trademark, which is relevant to this instant case.

**32.** A significant aspect of Plaintiff Kaniadakis' character, his business branding and his property, is his exclusive Rights afford to himself under the U.S. Constitution, our United States law and our common law. Rights including, but not limited to, for profiting from, for developing, for promoting, for licensing, for selling, for offering for sale Plaintiff Kaniadakis' intellectual property including U.S. Patent and U.S. Trademark titles. For instance, GOOGLE, INC. offered to buy the U.S. Patent rights. Plaintiff Kaniadakis' had executed a written contract with GOOGLE, INC. during a mutually agreed to and prescribed time period existing for several months in 2015. The GOOGLE offer was to buy 100% of Plaintiff Kaniadakis' patent title and all rights thereof. The offer was in the amount of $20,000,000,000.00 billion dollars.

**33.** Plaintiff Kaniadakis' intellectual property, U.S. Patent to wit one U.S. Trademark used to identifying mark and name in use for identifying elements in connection to the product, The U.S. Patent, thereof. Programs including voice program applications ("apps"), electronic messages/mail including (but not limited to) calendar related implementations, booking, planning, reservations, events, scheduling, appointments, expenses scheduling payments (buy now, shop apps), and so forth. Thereby,

essentially making voice phone calls and electronic messages/mail including (but not limited to, the various) the plurality of the calendar related implementations ('apps") as a program applications to the U.S. Patented Technology and U.S. Trademark in use by Plaintiff Kaniadakis to commercially brand and teach his intellectual property to The World by his multiple registration certificates and multiple well documented works. Plaintiff's use intent includes other program applications. Plaintiff's U.S. Patent is in use with programs beyond said calendar related implementations. For example, Plaintiff Kaniadakis' U.S. Trademark, *Talking Head*®, is in use for other program applications, which is serving the public at large and the Plaintiff to also describe his U.S. Patent in his teaching the practice of the art.

**34.** Plaintiff Kaniadakis' Trademark Registrations (above cited) represent the method describing the plurality of voice calling and electronic message/mail messaging.

**35.** Plaintiff asserts that a given name for each his program's application the name compliments the source of product's commercial branding, name, logo, icon, description, coined phrase, to help avoid confusion, misuse, deception, intended quality, the true designation and integrity of

the product source, traits and characteristics. For example, Plaintiff's source for generating each of the program's application is a resource of the single method described and issued, in part, by officials at The United States Patent and Trademark Office, which is representing the authoritative product source designation, and his U.S. Trademark, respectively.

**36.** The U.S. Patent and Trademark commercially branded name for this market is evidenced in public records and evidenced in prosecution history of the U.S. Trademark **PLAINTIFF'S EXHIBIT "A"** and U.S. Patent with drawings and illustrations as "Callendar Call". The U.S. Trademark is summarized in the Official Gazette as the mark without special characters, "callndr call". One Plaintiff Kaniadakis' an official registered website and his domain name is named as follows;

www.callendarcall.com.

The Final Description and Official record stating that the mark "callndr call" **PLAINTIFF'S EXHIBIT "B"** pronounced or phonetically sounded name representative as "Callendar Call", or Calendar Call".;

**a.** All products and its related technology are sold, for sale, marketed, promoted with U.S. Trademarks for expressing and of describing the art

of practicing his program; namely, Plaintiff's makes licenses available for the lawful practicing of his art and for commercially designating and unifying his U.S. Patent product source (with emphasis upon Independent Claim #15) with the plurality aforesaid designation of program applications. **PLAINTIFF'S EXHIBIT "C".**

**b.** Some, but not listing all, of Plaintiff Kaniadakis' certificates and registrations issued are noted below;

**i.** Plaintiff Kaniadakis' registered "callndr call" mark and this name was issued in standard block letters without special style or characters issue date JANUARY 21, 2014 with International Class 9, recorded on the Principal Register, Serial Number (SN) # 4,469,219 (U.S. CLS. 21,23,26,36 and 38) in connection to the aforementioned designated source, his issued U.S. Patent products;

**ii.** Plaintiff Kaniadakis' registered "Talking Head" mark and this name was issued in standard block letters without special style or characters issue date AUGUST 09, 2016 with Class 9, Principal, SN# 5,017,169 and in connection to aforementioned designated source, his issued U.S. Patent

products;

**iii.** Plaintiff Kaniadakis' registered Talking Head graphic art issued date AUGUST 16, 2016 SN# 5,021,480 with Class 9, Principal, and in connection to aforementioned designated source, his issued U.S. Patent products.

**37.** Plaintiff Kaniadakis has evidenced In The U.S. Patent and Trademark Office the commercially branded name for this market is displayed in public records and evidenced in said prosecution history, "Final Description" of the name and mark. Plaintiff Kaniadakis' registration is clearly evidenced in The U.S. Trademark official records **"Final Description"** as follows:

**["]…The mark is a contracture of "callendar call" intentionally spelled with two letters "L" and the expression pronounced as, "calendar call". …["]**

**38.** Plaintiff Kaniadakis' has cross-referenced his intellectual property, U.S. Patent and Trademark Office respective use thereof including the name with titles of Official registered works In The U.S. Copyright Office. Whereas, the name "Calendar Call" and "Callendar Call" has been given by Plaintiff Kaniadakis' to entitle certain copyright registrations. In

The Plaintiff Kaniadakis' U.S. Trademark Official registration and prosecution history "Final Description" as follows:

**["] …The mark has been identified in use with The U.S. Patent Office documentation and U.S. Copyright Office…. ["]**

**39.** Plaintiff's history is including the name with numerous publications. On other public media including video presentations, business plans, various domain names, websites, travel planning, social media applications to name a few applications to apply the name to "Calendar Call". Plaintiff Kaniadakis' use of "Callendar Call" and "Calendar Call" name could impact his future classification filings in connection to any goods and services. Plaintiff could make the reference to prior use and subsequently an intent-to-use (ITU) clause. Plaintiff heretofore could unlikely have doubt to cause confusion evidenced with Plaintiff Kaniadakis' 'prior use anywhere' in his subsequent works.

**40.** More than one name is used to identify the source. More than one name is employed for designation of Plaintiff's product including "Calendar Call". This calls emphasis upon the nature of any and all description(s) and representation(s) is accurately represented at any given time in the public arena. There is only one product source designation,

Plaintiff identified and described in the U.S. Patent including various (plurality of) program applications expressing and practicing the art, the product of U.S. Patented Technology. Each application may be applied, labeled or branded commercially, accordingly.

THE PARTIES

**Defendants**

**41.** Defendant, SAP, *et al.*, and Concur, Inc. (hereafter as, SAP, *et al.*) is, upon Plaintiff Kaniadakis information and belief, the corporation residing in North America Headquarters in Newton, P.A. SAP, *et al.* also engaged with international business including The State of Florida;

**a.** SAP, *et al.* acquired Concur, Inc. for a reported bargain amount of $4,800,000,000.00 (Billion) dollars. Concur, Inc. is essentially in the business of ‘relatedness of the products are sufficient confusingly similar’ (technology space) relating to calendar related implementations, scheduling, events, booking, planning, reservations, expenses, appointments;

**b.** Therefore, in essentially now Concur property resides in the same markets or similar technology space, ‘relatedness of the products are sufficient confusingly similar’, with the parent corporation SAP, *et al.,*

Defendants.

**42.** Defendants, Executive Boards of Director, VERIZON, INC., *et. al*;

**a.** The Executive Board of Directors, VERIZON, INC., *et. al* acquired AOL, INC., *Yahoo!*, Inc. (hereafter, VERIZON, *et al.*) is, upon Plaintiff Kaniadakis' information and belief, a corporation with Headquarters residing in New York, New York, and AOL, Inc. in New York, New York doing all business in U.S.A. and around The World including The State of Florida.

**b.** VERIZON, INC., *et al.,* acquired TECH CRUNCH, INC., and it is the online roles for TECH CRUNCH, INC. which tends to have an elusive physical presence, identity or location, as evidence will later go on the record to demonstrate.

**c.** However, history will show that AOL, Inc. has addressed in what appears to be select concerns for certain Tech Crunch, Inc. staff and members including at least one AOL, Inc. legal team purportedly addressing or taking a stub at responding to Plaintiff Kaniadakis' aforesaid Notices about U.S. Trademark matters and on behalf of Defendants captioned together herein. **Whereas;**

**i.** TECH CRUNCH is known in 'relatedness of the products are

sufficient confusingly similar' (a similar technology space) as very high profile role for publishing online information and online reporting agency for things in the technology space around the world;

**ii.** TECH CRUNCH is known to gather and report (post and document) information for certain owners and about certain owners of technology;

**iii.** TECH CRUNCH is known to offer online advertising space for sale;

**iv.** TECH CRUNCH is essentially the "go to" for information seekers including people, as freelancers, as start-up individuals, as entities, companies, and as for established enterprise level corporations and as for other contributing "disruptors" of technology markets;

**v.** TECH CRUNCH is known to entertain influential characters including high level executives such as executive board member staff adjudicating certain events in order to appear to be providing objective or reliable public information and accounting for its reporting roles. For example, *Yahoo!* C.E.O Marissa Mayer, AOL C.E.O Tim Armstrong; GOOGLE past C.E.O and currently The

Executive Chairman of Alphabet, Inc. Eric E. Schmidt, GOGGLE, Inc., and others.

**d.** VERIZON, INC., *et al.,* is, upon Plaintiff Kaniadakis' information and belief, a corporation having a level of responsibility and/or role with respect to the captioned Defendants and/or participants in this alleged scheme under the corporation VERIZON, *et al.,* Defendants.

**43.** SAP, *et al.* has corporate sponsorship together with other Defendants.

INFRINGING CONDUCT AND OTHER BAD ACTS

**44.** On May 03, 2015 Defendants were engaged in an event to create a program application, and the event and web application was published online.

**45.** Defendants claim to have "created" the title "Calendar Call". **PLAINTIFF'S EXHIBIT "D"**. The title of claimed work is displayed in the content for The World to indefinitely consume including the connections with video link connections, promotional, instructional and other video records.

**46.** Defendants create the same general impression with "Callendar Call", a likelihood of causing confusion in the same consuming public's

mind, and Defendants description has been allowed to remain in the public domain.

**47.** Defendants are in a similar technology space. Defendants' 'relatedness of the products are sufficient confusingly similar', a likelihood causing mistake Defendants' description of "Callendar Call" name, words, and marks employed in connection to the designated U.S. Patent product source and one designation of the source's plurality of Plaintiff's products, the description of his Calendar Call product therefrom.

**48.** Defendants' evidently cause a misrepresentation in connection to Plaintiff's intellectual property, U.S. Trademark and U.S. Patent, which is the designated name of the product source designation.

**49.** Plaintiff Kaniadakis' U.S. Patent title or name of the invention as typically required by official filings requires using us to apply a non-trademark and other non-commercial, so applying a generic sounding name to the description of the patent source of the product. Plaintiff has been commercially branding the name and marketing products that has created commercial sounding identifying marks *via* using U.S. Trademark names with the various known plurality program applications the art for

identification of program applications which are including in the practice of his issued U.S. Patent product source.

**50.** All the aforementioned Plaintiff Kaniadakis' outlined Official U.S. Trademarks are registered serial numbers and in continuous use in the United States of America and around The World. The registered intellectual property in The United States helps to identify Plaintiff's intellectual property sold, promoted, made for sale, together with other U.S. Trademark terms-of-art. Plaintiff has expended immense amounts with intent for securing the multiple exclusive ownership rights and identification in connection thereto his product, U.S. Patent 8,666,772. In particular, Independent Claims #15, thereof.

**51.** Plaintiff Kaniadakis' work exists in the public arena. Plaintiff Kaniadakis' trademarks are in composite or separately in application, among other places, U.S. Patent and Trademarks. For instance, as Talking Head® and/or as "callndr call®", "Callndr Call® Talking Head®", and description "Callendar Call", and so on.

**52.** Defendants' have challenged Plaintiff Kaniadakis' exclusive rights to make, promote, market and license the products and technology *visa-via* Plaintiff's intellectual property, U.S. Patent and Trademark Rights.

Defendants' act continued to engage the U.S. Trademark "Calendar Call" in causing Plaintiff paramount collateral injuries to the U.S. Patent, in connection to product's resource, the product "Calendar Call".

**53.** Defendants made money from global contracts such as corporate *Toyota, Inc.* brand automobile advertisements at the expense of the presentation of Plaintiff Kaniadakis brand. *Toyota* partnered with ride share program applications. Later, Defendants have commercial video advertisements such as the longstanding *CITRIX, CISCO, Incs*. brand was also tactfully placed, which runs as previewing video in cue to "Calendar Call" video and adjacent content displaying "Calendar Call". It is known that Plaintiff's technology has become distinguished from the *CITRIX,* CISCO name and other outdated technology. *CITRIX, CISCO* competes with Plaintiff. Despite Plaintiff's U.S. Patent and Plaintiff's Right to exclude (not compete) infringing technologies. However, *CITRIX, CISCO* has relatedness is relative to the Plaintiff's market space. Defendants' act could cause misinterpretation in the minds of the public to misrepresent the Plaintiff's intellectual property *vise-a-via* Plaintiff's U.S. Trademark with Defendant's infringing content. Even though, Plaintiff has secured the tile, and his technology is known as superior over *CITRIX and*

*CISCO's* outdated history, Defendants' ongoing replay evidence using Defendants' video content could cause prejudicial impressions, misleading in the public, and the Defendants adding insult to injury. Plus, Defendants gain continued revenue stream from Plaintiff's name. *CITRIX, CISCO* advertisements, which continue online and play over and over, previews the source as, "*CITRIX"* and the name as the most visible name in connection to product name and source of "Calendar Call" and video action, respectively. No other product is named, or is visible in connection to the video content, except as being as the false designations of origin as "*CITRIX*" the source. Defendants' could cause continued disruptiveness. Plaintiff's reputation and quality representing his work will always become subjected to the Defendants' various featured positioned pay to play promotional ads in the future, which the Plaintiff cannot control, and the online content remains at the will of Defendants, variable and unregulated content.

**54.** Defendant's alleged that they did not intend "make use" of the name described as "Calendar Call". Defendants' had engaged in misuse Plaintiff Kaniadakis' Registered Mark. Defendants already published content on Defendants' website application (app), and continued to engage the

"Calendar Call" name in connection to Defendants' false designation, false source and content in false description. The description is similar to Plaintiff's Registered Mark so as to likely cause confusion. The names are in near resemblance and have a very similar relatedness to aspects of Plaintiff's technology so as to have likelihood to cause confusion, misleading and misrepresents the Plaintiff Kaniadakis' technology, the nature, characteristics, qualities and reputation related intellectual property.

**55.** Defendants' technology could never be given a U.S. Patent on their described technology. One main use in Plaintiff's promoting and marketing the intellectual property has been to impart a high quality with the title of The United States Patent and Trademark applied to the products. Defendants cause compromise and negotiated Plaintiff's distinguishing features, parts and attributes against Plaintiff's intent and against Plaintiff's license requirements.

**56.** Defendants' actions have a likely to cause conflict between Plaintiff Kaniadakis' "Calendar Call" description and Defendants' engaging "Calendar Call". Defendants' misuse is evidenced with Defendants' publication describing "Calendar Call". Defendants' publication could be

giving rise to Defendants' claim(s) in the future. For instance, Defendants' become posed to assert the U.S. Trademark Office's clause 'prior use anywhere'. Defendants' could subsequent intent-to-use the described name including, but not limited to, competing against Plaintiff's U.S. Patented technology. Plaintiff Kaniadakis' Right to expand use could become curtailed. Since Defendants' actions compromise Plaintiff's actual right to file subsequent use applications. The 'prior use anywhere' clause could likely be causing Plaintiff harm and disadvantage, along with cause probable limitations to his Right to file intent to use (ITU) post-issue of his Registered Mark using another class.

**57.** The Defendants' continued misuse or continued engaging Plaintiff's U.S. Trademark could cause distortion, confusion, conflicts, permeations, so as to pervade and mutate, Plaintiff's intended way for representing described with product and technology.

**58.** Plaintiff alleges that by and through Defendants', but not limited to, the public being in connection to website application (app), Defendants wrongfully gains use of rewards by gaining use of data from "Calendar Call", Defendants' gain becomes Plaintiff's loss. *i.e.* For instance, a likelihood of generating, promoting and creating online wrongful

impressions, misrepresentations obtained with companies' and peoples' interests with the single act of invoking published digital media connections to "Calendar Call".

**59.** Defendants' sponsors and others are rewarded data in connection to Defendants' app. Defendants and other sponsors, associations, promotions, representations, Plaintiff alleges wrongfully causes Defendants' gain advantage over "Calendar Call" with use of data from the Defendants' app, and misleading the public about a connection to "Calendar Call".

**60.** Defendants sell data in connection to Defendants' app and in connection to misuse of Plaintiff's U.S. Trademark, "Calendar Call".

**61.** Plaintiff's has the exclusive Right to teaching his patent. The U.S. Patent itself is representing one product. Plaintiff Kaniadakis' one working product patent method in practicing of the art was by applying the trademark labeled under his "callndr call" name, Final Description, "Calendar Call".

**62.** Defendants' act could cause conflict and confusion of the product's commercialized U.S. Trademark's final description, which is serving the public and Plaintiff, namely described as "Calendar Call".

**63.** Actual evidence that Defendants' misuse, misrepresenting the product in the market is evidenced by the Plaintiff's Letters of U.S. Patent, title and deed. Defendants are conveying a different meaning. Defendants are engaged in misuse of Plaintiff's Registered Mark. Defendants cause misinterpretation.

**64.** Defendants' single act caused a continued, longstanding, challenge to the practices of the art thereby causing an incremental challenge for the Plaintiff controlling of his described works. Rights which Plaintiff Kaniadakis has been granted in the multiple Official Offices. Plaintiff's product source, designation origin as the U.S. Patented technology and the U.S. Trademark in connection to his product source. Defendants' continued to publish content and continued engaging Plaintiff's U.S. Trademark. Defendants continued challenging the practice of the art and expression of each the Plaintiff's property Rights, respectively.

**65.** Defendants' act is *via* the undisputable fact they continued engaging the name "Calendar Call" on a very high profile platform to stage their single act against the Plaintiff. The content is viewed global technology and global industry audience and leaders. The event is typically attended and judged by CEOs and other representatives of major global

corporations. For Plaintiff's "use" is the Defendants' misuse. Irrespective to Defendants' allegations about references of a "make use" statutory requirement. Requirements are primarily in reference to applicants seeking registration, intent-to-use (ITU), and/or use in interstate commerce. Essentially the same right could apply to ITU as not in use and/or as a question of Defendants' reference to Defendants' assertions in a reference to "make use". In any event, the practicing sprit of the law is believed protect or at least to accommodate registrants from twisting connotations in the market place among unsuspecting consumers and others. To help avoid the language provided by The United States.

**66.** Defendants have together and separately engaged in actions and acts in order to create another single act, event and contest; Namely, Defendants began an act of testing the Plaintiff's ready, willing, and able to police patrol against likelihood of confusion with misuse of a similarly sounding name or description in the public domain, market place, and 'relatedness of the products are sufficient confusingly similar' (in the market and technical spaces) described by way of the Plaintiff's accomplishments.

**67.** Defendants' actions to cause hardships and financially harm to

Plaintiff. Defendants' caused Plaintiff to exercise his due diligence and to litigate against the likelihood of causing further confusion, deception, mistake, deceit, as well as other the legal terms-of-art by Plaintiff's respective entitlement Rights granted to the Plaintiff.

**68.** Defendants' act causes conflicts to the public involving rightful ownership at large and to corporations making deals with Plaintiff Kaniadakis material to any time. Plaintiff's U.S. Trademark is in a connection part-and-parcel to Plaintiff's U.S. Patent. The trademark is not identifying goods and/or services that anyone else made or offers.

**69.** Plaintiff Kaniadakis maintains value of his high-quality technology and products securing licensees from infringing technology. U.S. Trademarks separate his program applications therefrom infringing products and/or technology.

**70.** Defendants' misuse of "Calendar Call" as if it was for Plaintiff Kaniadakis' product, the U.S. Patent. Whereas, Registered Mark is one distinguishing feature describing one use and practice of Plaintiff's U.S. Patent.

**71.** Defendant gains indefinite in connection to the market presence, influence, and ongoing advantages over the Plaintiff's intellectual

property, U.S. Patent and Trademark.

**72.** Defendants' single act is causing indefinite challenges to property ownership, negative impact, disadvantages with significant risks to value and integrity to Plaintiff's intellectual property, U.S. Patent and Trademark.

**73.** Defendants' continued misuse or continued to "make use" in connection to Defendant's website, website plugging the commercial name in the connection to the link, coupled together therewith Defendant's name tag Defendant's SAP, *et al.*, "Concur" and identifying the multiple "Calendar Call" content associations. Thus, incorporating the Defendants' company "Concur" with the commercial branding becoming indefinitely in connection.

**74.** Plaintiff Kaniadakis has given presentations to global audiences. Plaintiff Kaniadakis U.S. Trademark has been used and pronounced extensively in the public arena and in connection to Plaintiff's product, the U.S. Patent. For example, the global technology conference attended by over 40,000 people in 2012 from all over The World. Plaintiff Kaniadakis was one of only twelve inventors and presenters invited to give his product presentation at this convention. "Callendar Call" and the

identified mark, callndr call, identified the patented technology. Evidencing longstanding consumer and enterprise acceptance.

**75.** Therefore, secondary meanings of the trademark's use have been developed by the Plaintiff Kaniadakis. The use of Plaintiff's trademarks continue to become further adopted by the public and acquired as having its meaning in the minds of consumers and enterprise markets. This has been established by the official registrations. Plaintiff Kaniadakis maintains the control of the trademark names identifying intent in a reference to practicing his art, the patented technology rights. Plaintiff's product source, the U.S. Patent, is damaged from Defendant's designation misuse and Plaintiff's unintended expressions. Damage is part and parcel to the U.S. Patent's and Trademark's, its intended functional properties and its intended use, respectively. The scope of the practice of the product and each of the trademarks in connection to the product source, which is Plaintiff's U.S. Patent. Defendants' infringements as stated herein cause misuse, confusion, misrepresentation as Defendants continued engaging the description and identity "Callendar Call" which is in near resemblance to name applied in connection to Plaintiff Kaniadakis' product source; namely, his U.S. Patent. Defendants applied commercial branding

"Calendar Call", and the branding in description was against his Rights to use, represent, and properly identify designation. Against Defendants' misuse, misleading, misrepresenting, and false designation. Against Plaintiff's Right to exclude representatives such as the Defendants from any unlawful infringements of Plaintiff's U.S. Trademark or his U.S. Patent, respectively. Defendants' deceitful ways by misuse of trademarks which could be falsely representing imitations and misleading description and identification of the source of Plaintiff's intellectual property. Defendants cause compromising or depreciating actions against elements of the Plaintiff's U.S. Patent products. Plaintiff's expression of true functionality features, aspects, parts, traits and characteristics become part-and-parcel to acts involving trademark violators. Each and every single act of infringement is incrementally making matters more difficult to defend and to assert for the Plaintiff. A secondary meaning Plaintiff Kaniadakis created from the words "Calendar Call" is for his product, the U.S. Patent, and not necessarily related to the "Calendar Call" in the term used in the legal jargon context and adjoining the term-of-art.

**76.** Defendants have been evidently participating in a scheme to set up Plaintiff Kaniadakis and among Defendants other acts to cause more harm

essentially by delays, denials, wrongful channeling of responsibilities, false and misleading representations. Leaving SAP, *et al.* planning to skate away free from responsibility from other Defendants'. SAP, *et al.* would be surprising evidence about their devious roles with their responsibilities in this case. Defendants would be engaging deceitful acts to avoid any Court exposure and actions.

**77.** Merits of U.S. Trademark violations may become secondary acts. Defendants began a pattern and course of conduct or practice causing other wrongful act and bad acts. Causing compounded harm, injury and damage.

**78.** Defendants did not abide by the spirit of U.S. Trademark law, if not the letter of law. Defendants conduct continued to cause conflict and infringement issues.

**79.** Plaintiff Kaniadakis uncovered that Defendants were evidently on a course and pattern of conduct (misconduct) to stonewall the spirit of the law.

**80.** Defendant began forging acts juxtaposed to U.S. Trademark concerns. Defendants engaged in acts against Plaintiff Kaniadakis' goodwill and exhausted good faith intentions. Defendants were setting the

stage for Plaintiff Kaniadakis to potentially become culpable and a participant with Defendants' plan to act against the law. To violate an act under the U.S. Copyright Act. Plaintiff Kaniadakis believes that he uncovered Defendants' scheme to misleading and for engaging participants to effectuate an unlawful act.

**81.** Defendants' acts are believed to be revealing of Defendant's willful or intentional conduct to become a participant with other codefendants to violate The United States of America's Rule of Law. Plaintiff will demonstrate Defendants willingness or intentional misconduct.

**82.** Defendants' misuse of Plaintiff's Kaniadakis' Registered Mark involved massive media exposure presenting a one-time major global event. Defendants essentially claim that Plaintiff's alleged misrepresentation of "Calendar Call" (Mark) was essentially an accident or mistake.

**83.** Defendants alleged that "Calendar Call" mark or name is not statutory "use". Or, Defendant's "use" is not by the letter of law which requires Plaintiff's to define "use" relative to any applicant seeking a U.S. Trademark to become registered.

**84.** Plaintiff claims that Defendants engaged misuse of "Calendar Call".

**85.** Plaintiff alleges that Defendants continue to be unlawfully engaging the name "Calendar Call" in connection to Defendant's identification, false description, and false designation source.

**86.** Defendants' words, names, similarly sounding to Plaintiff Kaniadakis' description "Calendar Call" likelihood to cause confusion or to cause mistake.

**87.** Plaintiff created and developed intellectual property. Plaintiff owns rights to various U.S. Trademark registrations including The Letters U.S. Patent method registration issued to describe his product. The U.S. Patent is the representation of an expressed right or expressing the right in practice that The United States government has confirmed. Plaintiff Kaniadakis has applied the various unique trademark descriptions of the patent source to each his products to further distinguish others representing his unique products therefrom. Defendants' single description likely causes conflict of Plaintiff's products; Namely, Defendants' content, product, and misuse of Plaintiff's "Calendar Call" description to likely cause conflicting impressions in the minds of the public and in the public domain. Embodied in the description in words, the letters patent goes part and parcel to the product.

**88.** By virtue of Plaintiff Kaniadakis' intellectual property having inherent value and quality in connection to the U.S. Trademark registrations and U.S. Patent registration issued, any Defendants' misuse, misrepresentation, and likelihood to cause confusion on the name and on the technology (technology "product", tangible or not). Defendants' technology description and name can likely fool the public. Impacting by causing disadvantages on the value and quality of Plaintiff's product source. Defendant has likelihood to cause confusion of the products source's value.

**89.** Relative to Plaintiff Kaniadakis' use in connection to his intended products, the 'use" has been published. Relative to the Defendants' it is "misuse" of Plaintiff Kaniadakis' Registered Mark, and Defendants continued to be engaging the name "Calendar Call" with co-Defendants.

**90.** Defendants purportedly agreed use of The Digital Millennium Copyright Act (DMCA) and take down notice laws as the instrument to remove Plaintiff's U.S. Trademark infringement concerns. Whereas, Plaintiff's believes that Defendants were willfully causing agony, harm, injury, damage, punitive effects and other wrongful acts with cumulative effects on Plaintiff Kaniadakis. Defendant's ingenuous representations

were evidently misrepresentations and essentially prolonged the infringement matter.

**91.** This Court should examine Defendants' other conduct, alleged bad acts together with alleged violations of law *part and parcel* to intellectual property violation concerns.

FACTUAL BACKGROUND

**92.** Plaintiff had a contract with GOOGLE, INC. Defendants have known this fact, and in more ways than one.

**93.** On May 03, 2015 VERIZON, *et al.* engaged with captioned Co-Defendants in a scheme to perform an act in connection to a known **["] … hacker… ["]** website. The site called, "Tech Crunch Disrupt N.Y. Hackathon 2015", is a platform available to publish and to publically broadcasted events most directly involving existing and emerging technology markets. Wherein, representatives of Defendant "Concur" corporation claimed to have created and commercially branded a program application ("app") named "Calendar Call". The act continues to violate Plaintiff Kaniadakis' U.S. Trademark # 4,469,219. Defendants' domain name, address and directory name were primarily discovered at the following site:

https://techcrunch.com/video/**calendar-call**/518803559/

**94.** **Above:** Notice that the description "Calendar Call" misrepresents Plaintiff Kaniadakis' U.S. Trademark as the name of Plaintiff's mark was applied in connection to Defendants' website app.

**95.** Defendants' act made is evidently misleading the public to think it is in a connection to Plaintiff Kaniadakis' product. Defendants' misleading pathway is against Plaintiff's intentions for the registered mark, and the name is in connection to Defendants' sponsors, advertisers, vendors, enterprise and other consumers. Directed away from Plaintiff's intended connection to his product's content. Defendants cause likelihood of misinterpretation. Defendants cause the public at large, officials, competitors to get misrepresentations describing Plaintiff's U.S. Patent *viz.,* Defendants' continued engaging and continued misuse of the "Calendar Call" name is causing a confusing meaning of the single use for Plaintiff's Registered Mark in a reference to Plaintiff's products in use deviating from the registered U.S. Patent as the Product.

**96.** Defendants participated in an act which by its very name identifies the Defendants description so as to, "Disrupt"(break up) presumably the technology connected market. Plaintiff asserts that Defendants intend to

challenge or disrupt (break-up) The United States Official sites and the Plaintiff's registered intellectual property.

**97.** Defendants continued to be in connection, and Defendants have mutual interests, including but not limited to, benefiting from sponsorships, associations and connections offered *viz.,* Defendants' respective roles involving the 'relatedness of the products are sufficient confusingly similar' (technology space).

**98.** Defendants continued engaging in acts including the continued act of publishing variations of Defendants' website application's (app's) content, sponsors, promotions, and others with the alleged infringing material in connection and association to Defendants' apps. Defendants' act included an act to try to essentially negotiate or redefine the U.S. Trademark description so as to cause damage to merits of Plaintiff Kaniadakis' complaint, more particularly set forth herein.

**99.** On and around dates from May 12, 2015 through June 23, 2015 Plaintiff Kaniadakis was making numerous and various attempts to contact Defendant "TechCrunch" in discovery. To discover more about **"Disrupt Hackathon"** and responsible presenters with concerns about infringers of U.S. Trademark.

**100.** On June 23, 2015 Plaintiff Kaniadakis' sent a U.S. Certified mail with Return Receipt letter addressed to Defendants The Executive Boards of Directors and AOL, Inc. and Tech Crunch, Inc. constructive Notice with U.S. Trademark # 4,469,219 infringement concerns.

**101.** On or around the dates June 24, 2015 the first constructive Notice was sent using U.S. Certified mail with Return Receipt was sent in the physical mail and addressed to The Executive Board Directors at SAP, Inc., Defendant SAP, *et al.* A follow up phone call was made to the C.E.O Bill McDermott. An e-mail was sent to Defendant SAP, *et al.* with the attached above referenced physical mail. The request was essentially a simple one. Regarding further discovery and for "Channeling TechCrunch (an AOL, Verizon company/entity) U.S. Registered Trademark # 4,469,219 and "Concur", Concur-SAP f/k/a Concur Technologies, Inc.".

**102.** On July 06, 2015 AOL, Inc. now VERIZON, *et al.* answered Plaintiff Kaniadakis' U.S. Trademark # 4,469,219 U.S. Certified mail with Return Receipt letter dated June 23, 2015 sent to Defendant The Executive Board of Directors and AOL, Inc. AOL stated it was in reply also to its **["]… subsidiary, TechCrunch, Inc. … ["].** Whereas, among other allegations, Defendant AOL, Inc. (VERIZON, *et al.*) stated the

following;

**[“]. . . News coverage such as this by a publisher does not constitute trademark infringement or otherwise violate any intellectual property rights… [”]** (emphasis added).

Therefore, it appears that Defendant’s believe this is a freedom afforded to them among their First Amendment Rights (freedom of the press) under The U.S. Constitution. A fact concerning U.S. Trademark infringement or false reporting evidently was not the concern of Defendants AOL, Inc., VERIZON, *et al.* AOL, TECHCRUNCH Defendants continued to refuse to disclose or to reveal sources participating in alleged infringement, the name of the company or presenters and other material, responsible parties which Plaintiff Kaniadakis repeatedly and kindly continued to request. Defendants made it harder for Plaintiff Kaniadakis to discover information about responsible parties and whom they reported. This Defendant referenced the content concerning U.S. Trademark at the following locations:

http://techcrunch.com/events/disrupt-ny-hackathon-2015/video/#.rvdez8:dbPG

**[“]… as well as additional coverage and articles … [“]**

http://techcrunch.com/events/disrupt-ny-hackathon-2015/coverage/

On a much later date the Defendant AOL referenced the source broadcasted in Defendants' event, as "Concur". However, by the later date it became evident that the Plaintiff Kaniadakis had already uncovered the source false designation of the content in Defendants' video.

**103.** Defendants tried to hide the fact in reply to Plaintiff that other connections were publically addressed displaying content with infringing mark in Defendants' domain name connected in the following pathway and false designation:

https://techcrunch.com/video/**calendar-call**/518803559/

**104.** Defendants act included the act of plugging the name "Calendar Call" thereby Defendants' acquired a similar domain name to the U.S. Trademark. Defendants act increased the likelihood to cause confusion, among other U.S. Trademark terms-of-art, in distribution of content, videos and paid advertisements and in a connection to Plaintiff's U.S. Trademark. Plugging National advertisements including, but not limited to, sponsorship by *Toyota* brand commercial advertisements to the "Calendar Call" content, which could likely attract and mislead the public *via* search engines from Official connections to Defendants' sites.

**PLAINTIFF'S EXH. "E".** Referenced advertisements were not those of *Programmatic* type displayed on adjacent aspects of the Defendants' website app. Later, *CITRIX, CISCO, Inc*. longstanding commercial video advertisement presented ran before the description "Calendar Call". **PLAINTIFF'S EXH. "F".** It is known that Plaintiff's technology has become distinguished from CITRIX, CISCO's outdated technology. Yet, *CITRIX, CISCO* exhibits relatedness to Plaintiff Kaniadakis' in the technical classification or space with their outdated technology. Therefore, CITRIX commercials cause added insult to injury to the Plaintiff. Whereas, the Defendants' gain revenue from the commercial video advertisements that run before "Calendar Call" video is presented.

**105.** Plaintiff Kaniadakis' had to make numerous other telephone calls to Defendant The Executive Board of Directors, C.E.O's Executive office, and two of his executive assistants. These phone calls were followed up with several other letters further documented these concerns in the physical mail using U.S. Certified mail with Return Receipts addressed to the same.

**106.** On a letter dated January 18, 2016 **PLAINTIFF'S EXH. "G"** *Senior Vice President, Legal*, high level representatives for Defendant The

Executive Board of Directors and SAP, *et al.* stated the following;

**[“] . . .** In order to resolve this matter amicably, the information about this contest **was removed** from the **hacker website ‘DevPost’**, along with other references to ‘Calendar Call’. To our knowledge, there isn’t any other location where our team posted the information about this contest or any reference to ‘Calendar Call’**… [“]** (emphasis added).

Furthermore, this above referenced physical letter was copied (cc:) as follows to Defendant The Executive Boards of Directors, SAP, *et al.*;

**[“] … cc: Bill McDermott, C.E.O, SAP, SE, S. Steven Singh, Chief Executive Officer, Concur Technologies, Inc.-SAP Business Networking Group, Karen Williams, VP, Head of Global Trademarks, Anti-Piracy, Copyrights and Trade Secretes – SAP [”].**

Plaintiff alleges that Defendants’ letter was not the truth;

**a.** Defendants SAP, *et al.* Officer, Executive’s representations were false, the content and Plaintiff’s infringement concern was not removed;

**b.** Defendant SAP, *et al.* Officer, Executive, made reference to “DevPost” hacker site. **“DevPost”** and “hacker site” was not the detailed information provided to Defendants by Plaintiff Kaniadakis.

**c.** Defendant SAP, *et al.* allegedly made false statements,

misrepresentations, and the statements were sent to Plaintiff on behalf of The Executives Boards of Directors.

**107.** On March 21, 2016 Plaintiff Kaniadakis' sends the U.S. Certified mail with Return receipt in the physical mail to answer Defendant SAP, *et al.* above referenced January 18, 2016 SAP, *et al.* Since the information was either wrong or indicating another online website application (app), "DevPost", as stated in said letter. In an alternative, there was really no letter that was mailed. In either event, Defendants would refuse to send evidence or information for Plaintiff to help establish in fact that Defendants' allegations that they requested "to remove" material, and to help later again establish in fact that material related to Plaintiff's U.S. Trademark infringement concerns "was removed". This was for further discovery and full appreciation for findings of facts as purported. As it appeared to be nothing more than pure balderdash and pure poppycock or evidently false representations (misrepresentations) from Defendant SAP, *et al.* The material remained on the electronic address link, video presentation, and with the various references around the site concerning Plaintiff Kaniadakis' U.S. Trademark various audio and visual representation of "Calendar Call".

The name of the website Defendants referenced was not the name of the website as Plaintiff had detailed and addressed with various letters and documentations mailed *via* numerous U.S. Certified® mail packages with Return Receipts for the packages and addressed to the Defendants. The link was not truly removed. The trademark infringement concerns remained.

**108.** On April 21, 2016 Defendant SAP, *et al.* Executive Leadership, Officer, *Vice President, Legal,* **PLAINTIFF'S EXH. "H"** was essentially silent with respect to Defendants' representations on addressing Plaintiff Kaniadakis' March 21, 2016 letter Plaintiff saying the content remains. Plaintiff alleges that silent misrepresentation occurs through the defendant's silence on a key issue. By contrast, Defendant SAP, *et al.* stated the following;

**a.** **["]…We consider this matter is closed… ["]** (emphasis added).

**b.** **["]…We are not aware of any other use of Calendar Call… ["]** (emphasis added).

Defendant SAP, *et al.* Again, Senior Vice President, Legal, high level representations of Defendant The Executive Board of Directors and SAP, *et al.* references;

**c.** Copies (**cc:**) were referenced and given to Defendant The Executives Boards of Directors, SAP. *et al.* (same as stated in Defendant's previous said letters).

**109.** On July 25, 2016 and July 26, 2016 Plaintiff Kaniadakis' had to make another telephone call and mail yet another letter concerning legal representations stated and written position on behalf of Defendant The Executive Board of Directors, SAP, *et al.* April 21, 2016 and Plaintiff Kaniadakis' May 18, 2016 to Defendant The Executive Board of Directors, C.E.O's Executive, *et al.* office and relayed ongoing concerns to his immediate Executive staff. Again, this phone call was followed up with several other letters further well documented these concerns as requested in writing by Defendant's SAP, *et al.* by an electronic mail on the same date and in the physical mail using U.S. Certified mail with Return Receipts addressed to the same. Clearly, by this date and in this ongoing context, there existed this connection to Officers, seniors, high level members and other types of leadership positions. Defendant SAP, *et al.* continued with their participating roles with orders to fix these ongoing legitimate concerns. This pattern and course of conduct or practice continued with Plaintiff Kaniadakis' pressing for the truth and the

resolution from the simple request to channel this stated concerns presented with his first letter to The Executive Board of Directors, SAP, *et al.* on intellectual property related to U.S. Trademark matters.

**110.** On August 01, 2016 there was essentially substitution of The Executive Board of Directors, SAP, *et al.* Executive leadership. From the member representing The Board, the Officer and *Vice President*, Legal, to Scott Zimmerman, Senior Legal of member, SAP. *et al.*, and this member became representative of Defendant The Executive Board of Directors, SAP, *et al.*. High level representation on behalf of Defendants.

**111.** SAP Defendants would press Plaintiff Kaniadakis for a phone call or essentially meeting of the minds. Plaintiff emphasized that he wanted the written record. Plaintiff suggested Defendants first go back examine and first understand Plaintiff's points of concerns. Instead, SAP Defendants essentially would act in hast and essentially pre-empted the Plaintiff's mind and written record when SAP Defendant made would contact and sent at least one (1) e-mail to certain SAP selected co-Defendant participants. After essentially one point was kindly reiterated in a reply to SAP Defendants, that is, the co-Defendants' sub domain name address.

**112.** Plaintiff Kaniadakis continued to expressly want proof, by letters sent and in writing in the physical mail. Defendant SAP was reminded about Defendants' January 18, 2016 alleged contact and agreement to remove the content. Defendants stated that "Calendar Call" content was “removed”, according to Defendants alleged previous actions. When in history Defendants did not produce written evidence of the action Defendants represented and by what legal instrument Defendants used to allegedly get the content "removed".

**113.** On August 23, 2016 Defendant, The Board, SAP, *et al.* evidently negotiated and/or stated a “take down” (demand) and allegedly sent by e-mail to certain co-Defendant participants. **PLAINTIFF’S EXHIBIT “I”**

**[”] … we asked TechCrunch to take down the video … [”]**

(emphasis added).

**Above:** Defendant sent Demand Notice to co-Defendant. Defendants’ e-mail was in a reference to Plaintiff’s concerns including the displaying of the video and other content “Calendar Call” on link to Defendants’ (domain site). Defendants gave a casual type mention of the words “take down” rather than in the parties’ heretofore specific context by the words

"to remove". August 23, 2016 evidently initiated some evidence Defendants' constructive interference with co-Defendants; Defendants' act caused negating effect upon any mutual agreement with the Plaintiff concerning merits of this U.S. Trademark infringement at issue. Defendants' August 23, 2016 e-mail became a document which would alert Plaintiff's additional concerns including whether SAP literally intended to mean "take down" as in terms of The U.S. Copyright Act and enforcing demands under the DMCA.

**114.** Plaintiff would later uncover that Defendant SAP literally meant a "take down" in terms of DMCA and the legal term of art as the "take down" Demand Notice. Plaintiff suspected Defendant's mentioned use of the words on August 23, 2016. Therefore, Plaintiff would begin seeking clarifications given such abbreviated Defendant's e-mail representations made to be physically mailed on stationary and letter head from the Defendants.

**115.** On August 24, 2016 Defendant, The Board, SAP, *et al.* written agreement and contract **PLAINTIFF'S EXH. "J"** essentially appeared to substantiate said dated e-mail written agreements before this date. Also, for telephone call and for said related to agreement for Defendant The

Board, SAP, *et al.* to send a previously requested draft to Plaintiff. Also, at this point in time referenced, for SAP to send the letter SAP allegedly would "formalize" on Official letter head stationary to be addressed and mailed to Plaintiff and Defendant AOL, Inc., TECHCRUNCH, Inc., which has since become incorporations with, VERIZON, *et al.* At this point of reference, in light of SAP's August 23, 2016 letter or e-mail about "take down" allegedly sent to their co-Defendants, requested "draft" was obviated by some alleged action Defendants had already taken and sent to co-Defendants.

**116.** On August 25, 2016 Defendant, The Board, SAP, *et al.* by way of this concern of Plaintiff Kaniadakis for proper channeling, high level orders and senior legal staff members representing and misrepresenting The Board claim to have (finally) made responsible contact(s) of staff members representing and misrepresenting Defendant TECH CRUNCH, now as VERIZON, *et al.* in order to mutually fix Plaintiff Kaniadakis' concerns of this case's claims relating to an unlawful act. Therefore, each of the parties to help resolve infringement concerns. Yet again, on this date SAP. *et al.* stated for the record its intentions **(a)** ***"to remove"*** violating act of trademark infringement concerns and intensions by **(b)**

written contract and agreement for SAP, *et al.* **to "formalize"** its intensions and statements to other responsible Defendants in this matter. Furthermore, even by the later date, evidence is illustrating Defendants' intentions to favor Plaintiff Kaniadakis' intellectual property and U.S. Trademark infringement related matters by removing certain content published to the world.

**117.** SAP, *et al.* referenced contact with three (3) different VERIZON, *et al.* people. Two (2) of the Defendant VERIZON, *et al.* Defendants AOL, TECHCRUNCH, *et al.* are listed below. By contrast, Plaintiff Kaniadakis mailed three (3) different VERIZON, *et al.* contact locations and all sent to tangible physical addresses with delivery tracking. Plaintiff Kaniadakis mailed one (1) physical letter on June 23, 2015 to SAN FRANCISCO, and on November 01, 2016 to two (2) to VERIZON, *et al.*, Avenue of Americas and 140 W. St., both N.Y., N.Y. physical addresses. Plaintiff Kaniadakis sent e-mail to two (2) of SAP, *et al.* contacts as proffered by Defendant SAP, et al. The first co-Defendant, Ms. Ames, was given by SAP Defendant as shown below. The second co-Defendant alleged contact was given by SAP Defendant only as, "Matt", and "Matt" will be outlined later herein. Two (2) SAP contacts were

essentially low level sales and marketing people. Relative to high level SAP Executives, SAP Officers, including SAP legal representative of Defendant SAP. Defendants made deals and/or engaged people in substantial likelihood without having the requisite legal authority to give opining advice and representation, to promote, or to engage in such (legal, binding) agreements on the behalf of Defendants' corporation pertaining to such matters. Plaintiff Kaniadakis sent e-mail to one of SAP contacts on August 25, 2016 SAP listed as their "TechCrunch Contact Person";

ALEXANDRA M.. AMES

Senior Marketing Manager | AOL Tech

TechCrunch | Engadget

410 Townsend Street

San Francisco, CA 94107

Email: alexandra@techcrunch.com

**118.** On August 25, 2016 Defendant TECH CRUNCH, VERIZON, *et al.*, according to evidence Defendant SAP, *et al.* stated (quoted) to SAP, *et al.* and only evidenced by SAP, *et al.* e-mail the following:

**["] … The cease and desist order will need to come directly to us from Calendr Call for us to review. ["]**

**a.** Whereas, Plaintiff Kaniadakis, to this date, only had physically

mailed kind letters, well documented, constructive Notice letters to Defendants concerning this matter. Opposed to suggestions for submitting demands letters and/or other legal relief actions lawfully available to intellectual property owners by law in order to help remedy certain intellectual property matters. Defendants were attempting to (improperly) pivot and channel this action from this U.S. Trademark matter to implement legal documents involving this as a U.S Copyright matter. Plaintiff Kaniadakis repeatedly expressed concerns that this might be an unlawful action to take.

**b.** Whereas, by said statement it is not really clear to even Defendant TECHCRUNCH, VERIZON, *et al.* who is actually the named rightful owner of the intellectual property and U.S. Trademark. History will show Defendant AOL, also seemed to believe that intellectual property and this trademark at issue represented the presenters property on the date of their public event. Opposed to the creator's, inventor and the owner, namely that of Plaintiff Kaniadakis' U.S. Trademark. Therefore, Defendant refused to remove trademark content. Obviating Defendant SAP, *et al.* to "formalize a letter and mail the letter to VERIZON, *et al.* about intellectual property and U.S. Trademark ownership.

**c.** Whereas, by said statement, evidenced by Defendant SAP, *et al.* evidences Defendant VERIZON, *et al.* confusion pertaining to ownership and said trademark **PLAINTIFF'S EXHIBIT "K"** is essentially evidence for likelihood of confusion by the public at large. Notice that said statement calls the mark **"Calendr Call"** (statement reads spelling as, **"Calendr"**, showing spelling name and mark with **"dr"** as with U.S. Trademark, which appears evident in near resemblance to Plaintiff Kaniadakis' registered U.S. Trademark. The fact that Defendant identified Plaintiff Kaniadakis' mark like this.

**119.** On August 26, 2016 on or around 10:00 to 11:00 AM history **PLAINTIFF'S EXH. "L"** was the phone call from Defendants, and illustrative of a mutual oral agreement and contract between the parties, Defendant The Executive Board of Directors (The Board), Defendant, SAP, *et al.* and Plaintiff Kaniadakis. August 23, 2016 marked a date and outlined said referenced telephone Conference Call. Wherein, Plaintiff Kaniadakis specifically stated his concerns about Defendants' intent or Defendants' use of the words "take down" in Defendants' August 23, 2016 e-mail sent to the Plaintiff, as a course of action Defendants proposed to take on Plaintiff's U.S. Trademark infringement concerns.

Whereas, Plaintiff Kaniadakis' related intensions in a proposed agreement. Plaintiff agreed provided the first step was to read the context of the promised letter from Defendant SAP, *et al.* in a draft letter from Defendant SAP to be sent to Plaintiff Kaniadakis before any next move. Therefore, the "draft" was, once again requested, after August 24, 2016 dated e-mail perspective, and retrospective to SAP's August 23, 2016 action, to be sent to Plaintiff Kaniadakis *first*, so before a letter SAP would "formalize", as previously evidenced would be sent to their co-Defendants. Again, the letter and agreement was intended for Plaintiff Kaniadakis to potentially mail and attach to Plaintiff's letter. Therefore, Plaintiff to help maintain the chain of custody by mailing said formalized letter in light of reading said letter to their co-Defendants, VERZION, *et al*.

**120.** History will demonstrate that **(a)** SAP, *et al.* would not send said letter ***first*** to Plaintiff Kaniadakis' as agreed; **(b)** SAP, *et al.* wanted Plaintiff Kaniadakis, by contrast, to write the ***first*** letter back to TECHCRUNCH and/or AOL, now as VERIZON, *et al.* **(c)** The Board at SAP, *et al.* wanted Plaintiff Kaniadakis to send and to implement DMCA and "take down" Demand Notice actions, opposed to taking proper lawful

actions ("steps") to address this matter. Compounding this ordeal by; **(d)** SAP, *et al.* throwing the weight back on to Plaintiff Kaniadakis; For a problem **(e)** SAP, *et al.* caused, and; **(f)** continue to cause to be more problematic; Defendant SAP would act alone in an alleged unilateral agreement, or; **(g)** causing participation in an unlawful scheme of action with VERIZON, *et al.* against Plaintiff Kaniadakis, without mutual agreement by all the parties together as one (1), and not ineffectively as two (2) separate agreements, though forged by Defendant SAP, however, excluding Defendant SAP's liability in implementing the DMAC instrument against the law use in a U.S. Trademark infringement matter of concern.

**121.** On August 30, 2016 SAP, *et al.* senior level legal Counsel provided a Second contact for "TECHCRUNCH" to Plaintiff Kaniadakis' follow-up as;

**["]…** matt@techcrunch.com **… ["]**

Defendant SAP, *et al.* would provide Plaintiff with no company title, no phone number, no other intelligent contact information of so called responsible party purported by SAP, *et al.* Also, Defendants would not provide physical addresses. SAP, *et al.*, represented that they **["]… didn't**

**know … [”]**. (Refer to email evidence.) On a later date, November 09, 2016 Plaintiff uncovered the full name and contact of at least one (1) alleged co-Defendant participant, referenced as copied “cc:”. After the fact certain participants, including Defendants, were engaged in and continued to be engaging in and engaging with Defendants’ other acts to cause harm against Plaintiff Kaniadakis. Again, as with event content, Plaintiff’s belief that Defendants had involved other members in said scheme including roles of AOL and TECHCRUNCH and other participants that were knowingly or unknowingly becoming, culpable, contributing infringers, and/or aiding or abiding named Defendants and Defendants’ participants would not heretofore provide this information or material evidence heretofore, as Plaintiff Kaniadakis has gathered in good faith, good will and intent, and Plaintiff had attempted to gather and has reconstructed or alleged in compliant.

**122.** On August 30, 2016 Defendant SAP, *et al.* breached **PLAINTIFF’S EXH. “M”** said agreement and written contract to **“formalize” letter** to responsible staff members at Defendant VERIZON, *et al.* **“to remove” content** named “Calendar Call”. Despite repeated history about SAP intentions to “remove” content and first “formalize”

and confirm by mail to Plaintiff Kaniadakis said letter. SAP, *et al.* reply was as follows;

**[“] …"our <u>agreement</u> to consent to the video <u>takedown</u>"… [”]**

(emphasis added)

Defendant’s point of reference *“our agreement”* was evidently an alleged mutual agreement between SAP Defendant and participants of their co-Defendants’ staff members. Whereas, Plaintiff’s mutual agreement was in terms in reference to a letter from SAP Defendant mailed to Plaintiff Kaniadakis. Plaintiff Kaniadakis proposed a draft letter mailed (red line, mark up) from SAP to Plaintiff Kaniadakis then “formalize” the letter mailed to co-Defendants.

**123.** Defendant SAP, *et al.* reveals a different course of action. SAP, *et al.* changed the course from a U.S. Trademark action to a U.S. Copyright Act action. **PLAINTIFF’S EXH. “M”.** The Demand Notice was not previously mutually agreed to by all the parties and fully disclosed before August 23, 2016 to the Plaintiff Kaniadakis, which required the Plaintiff’s consent. There was evidently Defendants’ intention to set up a unilateral agreement between Plaintiff Kaniadakis and VERIZON, *et al.* to act against the law. By contrast, SAP Defendant

would carry on to pre-empt or circumvent Plaintiff Kaniadakis' written consent, his role, and the Plaintiff's would be participation in terms of the forged unilateral DMCA action. Culpability for SAP, *et al.* proposing unlawful act is evidenced. As SAP would carry on with the act or to reply as follows;

**["] … I have sent an email to TechCrunch confirming the proper next steps… ["].**

The statement was not as planned in the sequence as Plaintiff Kaniadakis considering SAP, *et al.* scheme of action, which could be believed to be lawful or plausible; **(a)** If all the responsible parties agreed **(b)** Agreed by the AOL, TECHCRUNCH, VERIZON, *et al.* staff who actually have the official power and authority to agree to resolve the U.S. Trademark matter **(c)** Examining said promised agreements by Defendants in this matter including Plaintiff Kaniadakis.

**124.** History will show Defendants' repeated pattern and course of conduct or practice entailing alleged false representations and *silent fraud* on behalf of Defendant The Board, SAP. *et al.* and facts outlined as follows;

**a.** As SAP claimed that letters were mailed to **"DevPost"** in the

past. SAP provided no evidence that the correspondence was mailed. SAP provided no evidence that the correspondence was correctly addressed and mailed in order to properly channel the TECHCRUNCH, AOL staff whom are actually responsible to order the action and “remove” content. By contrast, SAP named some unknown “DevPost” reference SAP stated in the SAP letter to Plaintiff Kaniadakis;

**b.** As SAP claimed material was “removed” in the past. Evidence is that Plaintiff Kaniadakis’ was not actually removed. Detailed information was sent on numerous dates to SAP, *et al.* Therefore, time line to above referenced dates in time evidenced there was an ongoing history of unreliable SAP, *et al.* documentations produced.

Therefore, if correspondence was mailed, then SAP acted without due care and consideration, mailing the concerns to the wrong company and people. In an alternative, bad faith acts and/or unfair business practices. In another alternative, Defendants knew there was a likelihood of multiple web site applications (apps) and development leading to content and greater than Plaintiff Kaniadakis has uncovered and has risen in complaint.

**125.** Plaintiff Kaniadakis’ call into question Defendant’s course of action move for Defendants’ DMCA and take down for U.S. Trademark

infringement concerns. Plaintiff Kaniadakis documented his § 512 f (2) concerns to SAP, *et al.* as early as August 23, 2016 during the telephone call. Plaintiff continued to document the same concerns.

**126.** In light of chronology and facts herein SAP, *et al.* representations Defendants were in sum a face down bad faith act. Evidenced with exposed a pattern and course of conduct or practice besides the examination about merits of U.S. Trademark infringement.

**127.** Defendants' have been essentially making allegations about "use". Whereas, Plaintiff Kaniadakis' asserts his claims are essentially in terms of Plaintiff's (his) use, as required by law for getting the U.S. Trademark. Defendants' continue engaging the mark and any misuse of the "Calendar Call" name and making 'misuse' in connection to the presentation video of Plaintiff's use of the Registered Mark. Defendants' misuse and misrepresenting the quality in relation to the U.S. Patent as Plaintiff's product source, distinguishing features and parts of the described method therein. Defendants' false description, misrepresent the nature, traits, characteristics, qualities and reputation of Plaintiff's intellectual property and source thereof. Plaintiff's U.S. Trademark identifies the product's source, "Calendar Call" one commercially named

product from the source.

**128.** Defendants essentially allege that they did not “make use” of Plaintiff’s U.S. Trademark and the name “Calendar Call”. Defendants essentially related to the material in connection to the name as an accidental misuse or “single act”. When Defendants were branding and applying the commercial name as “Calendar Call” to a program application in connection to the Defendant’s product which they have evidently developed. Defendants continued unlawfully engaging the name and source, use of a false designation as Defendants’.

**129.** Plaintiff Kaniadakis’ belief that material is repeatedly in use by applying the content in the online. There is no special “log in” to Defendant’s website connections. Plaintiff Kaniadakis claims that the public at large is free to have indefinite access visual and audio representation of the “one act”, use, or misuse thereof and applying the misuse of the “Calendar Call” name. Defendants continued to be unlawfully engaging the “Calendar Call” name.

**130.** Plaintiff Kaniadakis alleges that likelihood of the use or misuse will be at risk of adopting a different product or service connotation or association. Plaintiff asserts that the rightful ownership and

the rightful intended functionality of unintended named products and services could remain as an uncontested accepted truth about ownership and/or intended functionality, but for official records.

**131.** Plaintiff asserts that according to his reading and understanding of the law that once published by the Defendants in a single event creates an advantage to the parties acting with Defendants. The single act could give rise to cause (squatting right) advantage on a factual and legal basis of claim to 'prior use anywhere' and/or intent to use (ITU claims) material to a later time (a so called, *submarine claim tactic*).

**132.** Defendants' publication could cause a (squatting) disadvantage to Plaintiff's rights for enhancing by intent to use (ICU) his subsequent U.S. Trademark filing and recording, including, but not limited to, Plaintiff Kaniadakis' use of the name "Calendar Call" on Plaintiff Kaniadakis' video presentations such as for, promotions, instructional and so on. Even though such created productions and development may be included under common law rights. Public content becomes an obstacle and amount to an added expenditure which Plaintiff will now be forced to overcome at the expense of the Defendants' publication using "Calendar Call" name.

**133.** Defendants' are applying contextual connotations by the content in

connection to Plaintiff's Kaniadakis' U.S. Trademark. The name "Calendar Call" remains available in "public use". The content is repeatedly available. Defendants cause a (squatting) threat to Plaintiff to file and claim 'prior use anywhere' and/or intent to use. Defendants remain in connection to the internet of things in today's electronic world with "Calendar Call" name.

**134.** Defendants are alleging that they do not intend to "make use" of the name "Calendar Call". Defendants appear to be evidently in a point of view relative to only their intentions. Plaintiff asserts that his U.S. Trademark such as "Calendar Call" name has to be in connection to;

**a.** Relative to the point of reference as being made available to the public at large and relative to the "public use";

**b.** Relative to the U.S. Patent as the product

**c.** Relative to Kaniadakis' statutory meaning of "use" in connection to intended products representing his patent, and relative to Defendants' the mark violates the misuse sprit of the law and Defendants continued engaging the U.S. Trademark, "Calendar Call".

**135.** Plaintiff asserts that if Defendants' action resulted in any unintended consequences, then Defendant either would have acted and timely and

removed material or Defendants' representatives would have continued and abided the by a mutual agreement with the Plaintiff for Defendants' actions or inactions.

**136.** Defendants essentially claim no infringement exists essentially due to the fact this was just an academic practice or single event. Plaintiff Kaniadakis asserts that intent of the U.S. Trademark registration is to help avoid "mistake" and misuse by way of commercial branding products in a connection to the product. Defendants gave commercial branding to a product at the event. Defendants continued engaging "Calendar Call" and content in connection to Defendant's source.

**137.** Defendants were given longstanding constructive Notice by Plaintiff Kaniadakis. Defendants would not remove or compensate the Plaintiff.

**138.** Defendants SAP, *et al.*, Vice President, legal, Executive level Officers, legal document made representations that were in the records on at least two (2) documents about content displaying and applying Plaintiff's U.S. Trademark name "Calendar Call" SAP statements represented the following;

On January 18, 2016 SAPs', V.P., Officer stated;

**a. ["] … was removed"… ["].**

On April 21, 2016 SAP's V.P., Officer stated;

**b. [“] … “we are not aware of any current use of “Calendar Call” by Concur… [“]**

Despite January 18, 2016 and April 21, 2016 records evidenced above, this marked the Second Count against the Defendants' allegedly making false, misleading statements and misrepresentations. Further, marking a pattern and course of contact and practice which would began to develop.

**139.** Defendant SAP, *et al.* stated several other times in documents that they intended “to remove” trademark “Calendar Call”.

**140.** Defendant The Board, SAP, *et al.* high powered SAP officials, executive level and upper most senior level legal members, wrongfully and knowingly did not contact the proper co-Defendants.

**141.** Defendants The Board SAP, *et al.* representatives contacted and misguided **PLAINTIFF'S EXH. “K”** Defendants were making deals or engaged people in substantial likelihood without having the requisite legal authority and/or participants easily influenced low level sales or marketing VERIZON, *et al.* staff and to convince Plaintiff Kaniadakis to use of DMCA and take down Notices, which would ultimately and conveniently kill the action and responsibility against SAP. **PLAINTIFF'S EXH. “M”**

to "Matt" allegedly contacted by Defendants in regards to Copyright Act.

**142.** Defendants SAP, *et al.* conveniently at this time purported related that they would essentially stop communication and stated their intentions. After this apparent proposed devious plan failed to implement DMCA. Whereas, heretofore no staff at Defendant VERIZON, *et al.*, such as AOL trademark legal department, produce evidence that they agreed to the SAP, *et al.* wrongful or unlawful act they were evidently planning to perpetrate against the Plaintiff Kaniadakis.

**143.** Defendants commercially branded the technology presented. Representatives for SAP, *et al.* wear name labels or badges identifying their connection to Defendants'. Defendants' corporations' must employ due diligence before causing such name or branding which could cause "mistake" by any single act and before any going to broadcasted public events, which are viewed indefinitely by the masses.

**144.** SAP, *et al.* **PLAINTIFF'S EXH. "D"** Defendants would employ or invoke low level staff, each staff member participant essentially acting in a mule-like role, at the public event. One participant, later identified as "Chris Ismael", was utilized to deliver products, related products, and technology with use of commercial branding. If it were not willful or

intentional, then Defendants would have remedied the act and would not continue engaging the mark and any misuse. The same pattern was exhibited later in history, as Officers and other Senior high level members representing SAP, *et al.* would go on to use other low level staff members, or mule-like participants, to carry on with acts with Defendants, AOL / TECHCRUNCH, *et al.* At least two (2) Defendants' participants were named as, "ALEXANDRA M. AMES" and "Matt" (no last name, until uncovered after the fact), to address and become involved in very serious legal matters against U.S. Trademark laws and concerning infringement. **PLAINTIFF'S EXHS. "K" and "M".**

**145.** Defendants knew or should have known Defendants were engaged with people in substantial likelihood without having the requisite legal authority

**146.** Defendants become participants in unlawful acts under participants of Defendants' The Executive Boards' level members, by and through the direction and positions of leadership, officers and other high level ranking senior members.

**147.** Stage of development, available or making for market, selling or sale. Plaintiff Kaniadakis had to battle proof of originality and creativity of

his work. Next, Plaintiff Kaniadakis had the battle of turning his thought and idea and turn this into an actual invention. Defendants' purported marketing stage of development is essentially irrelevant. In light of the fact that regulating authorities that issue certificate registrations and serial numbers taking into account all material available intellectual property on the public arena. Even things and material published, though not previously documented by deed or title to the rights.

**a.** Defendants SAP, *et al.* applied the commercially branded name "Calendar Call" to a thing Defendants claiming that they had created. This branding strategy causes injury and harm to the same commercially offered market space as Plaintiff Kaniadakis. This causes greatly enhanced risks to Plaintiff as an innovator and inventor;

**i.** In the eyes of the public, and despite the official records;

**ii.** In the further benefits of registration and certificates documenting his work;

**iii.** In furthermore disadvantage to remove and distinguishing himself from question about legitimacy;

**iv.** In expenditures to reduce risks of the call to question the integrity of

the intellectual property in connection to, name, design or utility;

**v.** In subverting intellectual rights (submarine claims) under pretenses as an academic or commercial contest(s) distinguished the value of ownership including all domains and acts under the rules of law.

**b.** Defendants broadcasted under presumptive contest rules that the presenter representatives and/or in connection to their respective corporations are adjudicated as if they had created a work product or technology including a commercially branded name.

**c.** Defendants are essentially saying that they are without the authority to evaluate originality and ownership. It remains paramount for dealing in The United States to relay upon Official public notice and upon the owner's notice to violators.

**d**. Defendants took the risks. Despite receiving the official notice (certificate) and repeated constructive notices from the owner, Plaintiff Kaniadakis. Defendant VERIZON, *et al.* claim protection pertaining to their First Amendment Rights. Defendants VERIZON, *et al.* published, refused and continued refuse to remove "Calendar Call" content, in part, essentially under pretenses that Defendants' content was published reporting as NEWS media. Defendants are expected to deliver due

diligence, among other matters, publishing fake *vs.* true reports. Accordingly, it is not "NEWS" when Defendants have been notified that the content is actually in official history and not "new". Or, the "contest" continues well after the act. The act remains. The act becomes an indefinite challenge against inventors, as Plaintiff Kaniadakis, and he must beg to remove a question challenging rightful ownership every year the act continues.

**e.** Defendants' act caused an unfair business practice. In spite of the fact that even official intellectual property has an investment of time and money. Even after the invention is registered, dues are paid. Furthermore, an indefinite period unfairly challenges the life of the registered intellectual property. In the case of the U.S. Patent the time is limited to 17 years from issue. In the case of U.S. Trademarks, 10 years, renewable only with greater investments including expensive maintenance fees in order to preserve the Official records.

**f.** Whereas, Defendants so called single act remains on stage and available indefinitely, available, and free. Present for the public at large to consume.

**g.** Defendants must not become judged and viewed by the public at large as

the record the public at large could likely take in place of our official records and authorities.

**h.** Defendants are making money in the same market space, 'relatedness of the products are sufficient confusingly similar', as Plaintiff Kaniadakis. Particularly, e. g. Concur and other SAP, *et al.* technology including EPR and CRM related programs. With TECHCRUNCH, VERIZON, *et al.* revenue streaming in as it is generated by the content they publish. Defendants are receiving sponsorship and sponsored advertising dollars. For example, ongoing Toyota video commercials play before the Defendants ongoing "Calendar Call" video presentation. For another example, Defendant SAP, *et al.* is a corporate sponsor. Co-Defendant TECHCRUNCH, VERIZON, *et al.* also benefit from SAP, *et al.* participation. SAP sponsors the "Calendar Call" content *via* Concur and their representatives. SAP sponsors the TECHCRUNCH site as well. (Refer to the TECHCRUNCH site's online general corporate sponsor connections.) Trademark registration is to help avoid false sponsors in a connection to the product source in the public's mind. Thus, forms a loop. Later, the longstanding commercial *CITRIX, Inc.* video paid advertisement, which ran before "Calendar Call" video. *CITRIX, CISCO,*

*Inc.* has relatedness in the general space. This causing insult to injury to the Plaintiff, and Defendants increased revenue gains from the commercial advertisements. It is known that Plaintiff's technology is state-of-the-art over out dated technology in some of CITRIX, CISCO's history.

**i.** "Free" or "not made for sale" both can be tantamount to the same. Many program "apps" are free, but play a role in a revenue market chain making money from promotions and advertising. *e.g.* On the grounds that apps are "Free" or not "made for sale" must be examined in a frame of reference in today's geography. As industries and market places such as with computing equipment and cyber space, Google, Facebook, Microsoft and Billions of other cyber space apps, native and web based apps. In the event a corporation as did SAP, *et al.* commercially brand its technology and there is exists the connection to the company, SAP, *et al.* gains an advantage. Either to lower the other brand or technology or to offer competing technology in connection to their other goods and services they offer. This is calls to question an interpretation of laws pertaining to made for sale, selling and distributing methods. The space becomes worth a different value in the event terms-of-art are applied in

reference to digital media of things including program applications ("apps") that are "free" in today's market place.

**148.** On November 01, 2016 Plaintiff Kaniadakis sent by U.S. Express mail Notice to Comply, Cure, or Quit to Defendants captioned in this case.

**149.** On November 09, 2016 SAP, *et al.* ultimately sent its single letter and this one was via physical mail to which was addressed to an "Assistant AOL General Counsel", Dulles, Virginia. **PLAINTIFF'S EXHIBIT "N"**. Defendant SAP, *et al.* and defendant participant's said letter was in some correspondence to, addressed and mail to AOL. Defendants SAP sent said letter to Plaintiff Kaniadakis only as an attachment to Defendants' SAP's email on the same date said letter was mailed only to co-Defendants. The letter was not as Defendants' agreed to. Again, marking said beach in complaint. This is the first evidence of a Defendant SAP's physically mailed letter, which was sent to AOL General Counsel, Dulles, Virginia. Whereas, Plaintiff's belief that the identified AOL General Counsel had never sent a reply or had addressed the Plaintiff in answer, only vague AOL email. By contrast, at least (1) one SAP Defendant was evidently, only at some point in time, in contact

with the named AOL representative. At least one (1) Defendant SAP July 31, 2015 letter copied "cc:" allegedly mailed from SAP, *et al.*, Concur, to the Defendant AOL, 770 Broadway Dr., N.Y, N.Y. address. (Not Dulles, VA.) VERIZON, *et al.*, two (2) e-mails, which were sent from the unidentified party, un-named persons, no address, no phone, and no title that were sent vaguely named in email closing, "AOL Trademark Team". No contact information. Defendants' closing email was only as, "AOL Trademark Team". Defendants' AOL, *et al.* e-mail messages were in reply to Plaintiff on July 06, 2015 and the final e-mail on December 08, 2016. Neither of said Defendants' AOL email was believed to have been at any time followed-up by Defendant VERIZON, *et al.* or any AOL participant in the physical mail. **1)** First e-mail, on July 06, 2015, Defendant AOL Trademark Team appears to be in reply to Plaintiff Kaniadakis' letter mailed via U.S. Certified mail to Defendant AOL and TechCrunch, which Plaintiff mailed to the San Francisco, CA physical address. **2)** Second e-mail, on December 08, 2016, AOL Trademark Team e-mail was evidently in a reply to Defendant VERIZON, *et al.* mailed to each of the physical addresses located in New York, New York (N.Y, N.Y). Plaintiff had mailed said letters to the Corporate

Headquarters to help assure proper channeling of the Plaintiff's U.S. Trademark infringement matters.

**150.** Plaintiff's Kaniadakis' information and belief that Defendant VERIZON, *et al.*, "AOL Trademark Team" is likely to have essentially different participating roles and responsibilities than Defendant VERIZON's U.S. Copyright (team).

**151.** November 09, 2016 dated letter became delivered to co-Defendants' on November 14, 2016. A date marking part of Defendants' intent. SAP sent AOL Heads up by email.

**152.** Defendant SAP, *et al.*, Officers, Executive staff members and other representatives, including *Vice President, legal* at SAP were shown to have been evidently making false and/or misleading statements and representations. Specifically, as Defendants stated content "was removed" relative to Plaintiff Kaniadakis' stated U.S. Trademark infringement concerns. This appears to be Defendants' intent, as Defendants to have essentially repeatedly related some intent "to resolve" and Defendants' ongoing expressions "to resolve" and to have resolved the content in reference to Plaintiff Kaniadakis' infringement matter. Defendants still further gave statements amounting to Defendants alleged intent as they

essentially said they will be removing the referenced content, as Defendants' continued to be claiming that they were resolving Plaintiff's U.S. Trademark infringements by removing the content. Defendants repeated this related pattern, and the Defendants' conduct was documented. Plaintiff Kaniadakis even confronted Defendants about this pattern and course of conduct in Plaintiff's U.S. Certified letters with Return Receipts Requested. *(Reference is made to Plaintiff's Exhibits.)*

**153.** Defendant SAP, *et al.*, Officers and Executive staff members and other representatives, including *Senior Vice President, Legal* Officer's role at SAP who had copied "cc:" representations and alleged misrepresentations to The Executive Boards of Directors. Plaintiff Kaniadakis was in contact material to infringement matters.

**154.** Defendant SAP, *et al.* (by direction of The Executive Board members) had its relatively high level senior legal team continue to pursue Plaintiff's trademark infringement matters. By contrast, Defendant SAP's Senior IP Counsel Global Trademarks and Copyrights made contact, material to certain acts set forth and outlined herein, primarily making alleged contact or allegedly dealing with low level staff members at Defendant AOL and TechCrunch. Defendants and participants

intentionally engaged, or were allegedly dealing with, people in substantial likelihood without having the requisite legal authority.

**155.** Defendants would attempt to pass off responsibility and certain acts, as history will show, to Plaintiff Kaniadakis. *(Reference is made to Plaintiff's exhibits including* **EXH. "K"**.*)* At other times/dates history will demonstrate Defendants SAP, *et al.* made what might well amount to false and misleading statements, as Defendants made statements about taking what Defendants made appear to have been lawful actions and actions to address the parties' infringement concerns. Accordingly, Defendants' act(s) or action(s) exhibited other bad acts pattern and course of conduct or practice became evidenced, as Plaintiff's belief that history will likewise demonstrate.

**156.** On November 14, 2016 SAP, *et al.* marked the date of Defendants' believed stated intent against the Plaintiff. (Note: This date marks the same date AOL accepts co-Defendants' November 09, 2016 letter in the mail. **EXH. "N"**.)

**157.** On November 14, 2016 Defendants SAP, *et al.* stated The Executive Boards of Directors' intention **["] … SAP does not intend to pay … ["]**. **EXH. "O"** Defendant SAP, *et al.* at least one (1) statement is

believed to help to further demonstrate and to reveal participants' actual intentions in complaint's factual timeline. SAP, *et al.* alleges Defendants have stated that participants have at least (1) once **["] … done all it can to address your concerns… ["]** and/or **["] … this case is closed … ["].** Defendants alleged the following;

**a. ["] … SAP does <u>not</u> <u>intend</u> to pay <u>the</u> $532,299/year "royalty"… ["]** (emphasis added)

**b. ["] …<u>because</u> SAP has not used/infringed what <u>you</u> <u>claim</u> to be <u>your</u> intellectual property… ["]** (emphasis added)

**158.** November 14, 2016 marked the first and last time/date Defendant SAP, *et al.* would expressly state their intentions or ill will. SAP was not going to pay, or to otherwise make mutual agreements, to become licensed before December, 2016 and year closes. Defendants were given many notices with constructive notices on dates before Plaintiff's demands. Plaintiff continued to beg that his intellectual property in connection be properly licensed to properly identify the product source, the designation and description as the Plaintiff's use of the mark. This event followed November 01, 2016 when Defendants were sent demand notices, each mailed by physical mail to all Defendants.

**159.** Plaintiff Kaniadakis believes that, among other concerns, Defendants SAP, *et al.* had essentially acts were with 'ill will', no intention, or 'will' to remove at any cost Plaintiff's infringement concerns. Despite Defendants SAP, *et al.* history given in complaint. Defendants indeed had the history of one contradiction after another, which early in this case **January 18, 2016** and **April 21, 2016** Defendants' repeated at least on two counts stating infringing material **["] …was removed… ["]** and **["] … we are not aware of any current use of Calendar Call"… ["]** stated in past tense, respectively. Defendants did not address their misuse. Followed by more delays. Defendants SAP, *et al.* delayed again from August 01, 2016 through November 14, 2016. Defendants, Executive Boards of Directors, SAP, *et al.* kept repeating evidence of Defendants' empty promises and Defendants' began digressing to alleged contentions and alleged intent **["] … to remove … ["]** the content. SAP seemed to demonstrate a deceitful type of common pattern and conduct or practice which would ultimately reveal true evidence of Defendants unwilling intent and SAP was evidently instructing other Defendants to act against the law, as complaint has outlined previous to the November 14, 2016 date.

**160.** On November 14, 2016 Defendant SAP, *et al.* essentially existed from these U.S. Trademark infringement concerns in complaint. Yet, Defendants willfully continued to publically broadcast the concerns of infringing content outlined complaint.

**161.** After November 14, 2016 Defendant VERIZON, INC., *et al., viz.,* “AOL Trademark Team” left in the dark leaving Plaintiff without evidence of SAP, *et al.* contract agreement to “formalize” Defendants’ good faith act and mutual agreement. Defendants’ actions and/or inactions would cause Plaintiff and This Court to become left in the dark. Despite upon information and belief articulated to Plaintiff Kaniadakis by the Defendants. Since the Defendants were *silent* on representations before said date Defendants tried to sell to him about resolving these concerns of the parties.

**162.** Plaintiff’s belief Defendants’ acts were in a deliberate plot to leave this matter in the dark by the Defendants. Defendants’ November 09, 2016 letter did not shed some light on Defendants’ previously documented acts and unlawful action including use of the DMCA and take down notice. Except, there was a point in time when Defendants disclosed a full name, at least one (1) AOL Defendant believed acting as a

participant and allegedly one person purportedly as having responsible role with Defendant VERIZON, *et al.* and in contact with Defendants.

**163.** Plaintiff essentially wanted proof, context, and the names, titles, physical evidence and addresses of the legally responsible participating members which participated in the Defendants' claimed plan (using Copyright Acts) following the Defendants' telephone call conference to the Plaintiff and the purported "steps" Defendants agreed to take. Therefore, Plaintiff asked Defendants to put it in writing. Plaintiff's belief that this legal concern necessitated context and understanding on any of Defendants' alleged agreements. Plaintiff's belief that, without legal context and mutual parties' understanding, Defendants were evidently posed for making a scheme for committing an unlawful act or bad act against the law. However, to be held against the Plaintiff.

**164.** Defendant SAP's said letter causally referenced it copied (cc:) to "Matt Burns", and the previously mentioned e-mail address. Plaintiff's belief that Defendant SAP had been essentially addressing different people, as indicated by the SAP November 09, 2016 letter.

**165.** The November 09, 2016 letter allegedly was sent to AOL's Trademark team for the *first* time and date, members in Dulles, VA –

*versus-* members located or connected to San Francisco, CA. SAP said letter mentioned "Matt Burns" and e-mail address. By contrast, Defendants' SAP, *et al.* said letter made no reference to any plan AOL, TECHCRUNCH, *et al.* about aforesaid stated Defendants' participation and/or agreement together.

**166.** Defendants' said letter did not put context of reported allegations of Defendants being essentially in agreement; **(1)** In terms of the resolution with use of the U.S. Copyright DMAC and take down or "CEASE and DESIST DEMAND", which SAP previously represented to Plaintiff. **(2)** In terms of Defendants' further evidence of a lawful instrument that Defendants' claim to have proposed to resolve Plaintiff's U.S. Trademark concerns. **(3)** In terms of any mutual agreement by co-Defendants to resolve any U.S. Trademark infringement concerns at all.

**167.** Defendant SAP, *et al.* was previously in a reference to California participating and essentially Defendants' marketing/sales team members. Defendants were addressing Copyright type matters or using The U.S. Copyright Act. By contrast, Plaintiff Kaniadakis' ongoing documentations in reference to this as being a U.S. Trademark infringement matter.

**168. PLAINTIFFS EXHBIT "N"** Defendants' November 09, 2016 letter exposed an alleged *silent* misrepresentation by Defendants. November 09 letter does not seem to reveal Defendants' culpability in the scheme to cause alleged unlawful act and other alleged acts in complaint. Defendants' said letter did not reference at least one of aforesaid mentioned co-Defendants' as participants previously engaged, or as otherwise outlined herein complaints' factual timeline account. Defendants' November 09, 2016 documents helps paint Plaintiff's growing concerns and compounding issues against the Defendants' alleged actions and/or inactions outlined in said timeline. The said letter compounded Defendants' ongoing acts, which evidence a pattern and course of conduct or practice that Defendants' actions and/or inactions were evidently not represented in good will and/or good faith. In a context of Defendants other acts, attempted to induce the Plaintiff, Kaniadakis, into the unlawful scheme to take improper steps to resolve parties' U.S. Trademark infringement concerns. By contrast to Defendants' allegations, Defendants' introduced this as a U.S. Copyright matter to co-Defendant members participating in the scheme, thereby to induce Plaintiff into harm only him and held against certain other participants and co-Defendants.

By Defendants acts were believed so as to induce Plaintiff to file the DMCA and take down Notices and against the law without all the Defendants. Otherwise, participants' acts, actions and inactions in said timeline and in the scheme evidenced were for reasons other than represented and/or perpetrated by Defendants. Defendants' acts become evidenced by alleged misrepresentations and silent fraud when some light is shed on context, documentations, and in light of outlined timeline in complaint.

**169.** Defendants' were further engaging in acts besides any such alleged merits of alleged U.S. Trademark violation. Defendants' continued to be engaging in acts in the matter about the U.S. Trademark offensive act. The fact that Defendants continued to be engaging in publishing digital media and content online concerning U.S. Trademark infringement, "Calendar Call".

**170.** Plaintiff alleges that silent misrepresentation occurs through the defendant's silence on a key issue. Evidenced by **PLAINTIFF'S EXH. "N"** Defendants' November 09, 2016 letter addressed to their co-Defendants. There was no stated or even related mention to co-Defendants' past reference to a DMCA agreement identified and

addressed, which certain co-Defendant participants purportedly agreed to take to resolve the U.S. Trademark infringement concern.

**171.** Defendants effectuating a *Crossfit* move against Plaintiff Kaniadakis. For Defendant VERIZON, INC. *et al.* to likely take a move to cause affirmative action claims brought forth against the Plaintiff Kaniadakis. Apparently to leave co-Defendant SAP 'scot-free' from infringement, liability, culpability, and other unlawful acts alleged in complaint. Defendants may have been enabling co-Defendants to essentially destroy Plaintiff's grounds or conceal material evidence, outlined infringement issues and matters addressed in this complaint. Defendants' acted to allow their acts to be free from harm, restraint, punishment, or obligation. *Ref.* ***CrossFit, Inc. v. Alvies,*** **No. 13–3771, 2014 WL 251760 (N.D. Cal. Jan. 22, 2014)**.

**172.** On November 23, 2016 Plaintiff Kaniadakis mailed via U.S. Express mail Demand Notice, Cease and Desist Notice letters to each of Defendant's VERIZON, *et al.* physical addresses. AOL, TECHCRUNCH, INCS., *et al.* and Defendants' e-mail evidenced further receipts of Plaintiff Kaniadakis' U.S. Certified mailed letter to SAN FRANCISCO, CA and to N.Y., N.Y. address(es). Plaintiff Kaniadakis'

also enclosed two (2) cover letters, Notices, dated as November 22, 2016 therein the U.S. Express mail.

**173.** On December 08, 2016 Defendant VERIZON, *et al.*, "AOL Trademark Team" claiming themselves as legal representatives of AOL and its subsidiary TECHCRUNCH sent another answer by email.

**174.** SAP engaged in interference and unlawful action. SAP set up a "Demand to Cease and Desist" action. DMAC and "take down" notice. Furthermore, SAP, *et al.* "outlined steps" and sent the scheme to Defendant VERIZON, *et al.* Plaintiff Kaniadakis did not receive the email directly from Defendant AOL, TECHCRUNCH at any time. In fact, members of Defendant AOL, TECHCRUNCH replied by stating do not contact. Contrary to representations SAP, *et al.* had stated in earlier emails about VERISON, *et al.* contacts and dialog to open with Defendants.

**175.** On December 08, 2016 marks further evidence of Defendant's tortious interference. Defendant VERIZON, *et al.* was evidently unwilling to remove Plaintiff Kaniadakis' contested infringement content displaying "Calendar Call". SAP apparently either suggested to or agreed with AOL DMCA demand notice. This changed the course from Plaintiff Kaniadakis' relatively friendly letters with constructive notices to a

dynamic of "Demand" letters. Notices about "Calendar Call" as an infringing trademark in the authoritative form acting by the power of DMCA and take down of questionable infringing content;

**a.** Defendants' *viz.,* **["] …DMCA… ["]** and take down **["] …the Demand to Cease and desist … ["]** Notices;

**b.** **["] …proper next steps… ["]**

**176.** SAP, *et al.* representatives knew or should have known that it is unlawful to send implement the authorities in reference to U.S Copyright demands on a U.S. Trademark matter. SAP, *et al.* knowingly and materially tainted and caused in repairable damaged negotiations which could have existed between VERIZON, *et al.* and Plaintiff Kaniadakis.

**177.** Material to this sequence of events between SAP and other AOL, TECHCRUNCH people's role, the VERIZON, *et al*, AOL Trademark Team did not provide any material to facts and chronology related statements, material to facts and chronology which SAP's referenced and attempted to have others carry on; Namely, certain parties taking action(s) via DMAC and the Defendant's SAP's stated "take down" demands, and not by the Plaintiff.

**178.** Defendant SAP's evidently negotiated and/or stated a "take down"

demand evidenced on August 23, 2016 and allegedly sent by e-mail to certain participant members of the co-Defendant causes Plaintiff compromised negotiation in his subsequent agreements with co-Defendants. When SAP would later hide the fact (by November 09, 2016) that SAP allegedly were making deals with co-Defendants for DMCA and/or take down actions. SAP evidently would try to have the parties relay upon certain (other) low level AOL, TECHCRUNCH staff members representatives who were allegedly serving in some connection to AOL, TECHCRUNCH. However, as low level sales and marketing staff. Rather than equivalent reasonable negotiation between matching relatively high level negotiations involving legal counsel representing and misrepresenting each of the parties, Defendants made deals or engaged people in substantial likelihood without having the requisite legal authority. Furthermore, SAP's claimed to be uncertain about these low level contact information details. SAP listed people with vague contact information and people with highly questionable authority could properly act on behalf of VERIZON, *et al.* corporate headquarters, Executive Boards of Directors.

**179.** Defendant SAP, *et al.* would then send to Plaintiff by e-mail

selected excerpts that SAP only copied/pasted into the body of their email. SAP claimed that such statements were in quoted by and a reference to certain AOL, TECHCRUNCH questionable staff members. SAP purportedly was instrumental in instructing or allegedly negotiating with AOL of the **[“] …proper next steps… [”]**, SAP, *et al.* stated. Plaintiff’s reading of the SAP e-mail “proper next steps” was in reference to the Defendants’ instructions for Defendants’ planning on moving forward *viz.* using the U.S. Copyright action, DMCA and take down demand. Against the law by Defendants’ plot for use of U.S. Trademark measures for providing Plaintiff’s intended relief and resolution.

**180.** Defendant SAP’s November 09, 2016 letter, by contrast, was provided in a different context by e-mail to Plaintiff Kaniadakis heretofore. November 02, 2016 Defendant SAP, *et al.* “next steps” was in reference to “colleagues” as participants giving instructions to each other. Defendant SAP, *et al.* was not in context to steps in reference to their co-Defendants’ and Plaintiff. The “letter” was not the agreed upon letter to “formalize” letter of the understanding between Plaintiff Kaniadakis and Defendants. Defendant SAP, *et al.* references “proper next steps” and a “letter” before November 09, 2016 were different. Defendant’s November

02, 2016 e-mail was ultimately delivered. However, the Defendants' alleged breach, the alleged Defendants' silent fraud or misrepresentations were evidenced even after Defendants' letter. SAP made it appear that they had fulfilled the agreement, after Plaintiff Kaniadakis exposed the breech and the scheme to use DMAC and take down notice against the law, without members legally responsible participants' co-Defendants in agreement.

**181.** Defendant SAP, *et al.* purported contacts from Defendant AOL, TECHCRUNCH would not contact Plaintiff in reference to these matters.

**182.** Defendant SAP, *et al.* would then send by e-mail attachment U.S. Copyright DMAC and take down order. DMCA attachment with redacted information to Plaintiff Kaniadakis.

**183.** Defendant SAP, *et al.* dropped out. This transpired on or around the date after SAP ultimately mailed its single letter via physical mail addressed to an "Assistant AOL General Counsel", Dulles, Virginia. Contrast to "AOL Trademark Team" or SAN FRANCISO, CA or, to the unknown lower level staff.

**184.** By this period of the scheme Defendant SAP, *et al.* had two (2) more counsel representatives each dropped out in sequence. Apparently

escaping justice and exposing the alleged scheme to The World. Defendants' knowingly and willfully committed this unlawful act. Plaintiff submitting DMCA without formalized letter to the proper legal authorities, and all the parties on board and in agreement causes substantial risks, damage, disadvantage, injury, liabilities, among other unlawful penalties, to Plaintiff Kaniadakis with VERIZON, *et al.* turning the tables *against* Plaintiff Kaniadakis. The parties attacking Plaintiff with their counterclaim. For sending DMCA and take down on a U.S. Trademark infringement matter.

**185.** On September 06, 2016 Defendants' SAP, *et al.* e-mail evidenced likelihood of confusion and conflict with Plaintiff Kaniadakis' intellectual property, U.S Patent and Trademark, both, may be evidenced in the following statement and allegations;

**[“] …"Concur referred to <u>their</u> app as “Calendar Call,” accurately <u>conveying</u> the entry’s ability to work with calls in a calendar… ["]** (emphasis added).

**[“] designed it to do … person’s calendar and <u>connects them to the conference call occurring at that point in time</u> … [“]** *(the emphasized part given by Defendants, underscored).*

**Above, latter statement;** On July 31, 2016 Defendants' represented Official's statement was asserted from Ms. Melanie Morgan, SAP's *V.P. and Head of Corporate Legal*, and presently as *Senior V.P., Legal*. Plaintiff's identification, representation functional aspects, features and description, of "Calendar Call" damaged Plaintiff's U.S. Trademark. Defendants' compounded the damage, as evidence with Defendants' legal allegations and with Defendants' continued online presence, video, publication, promotional material and act of engaging the Plaintiff's U.S. Trademark. Plaintiff's source designation becomes misleading as stated. Even as legal representatives describe content in connection to "Calendar Call" demonstrating a likelihood that the general public, other technologists, enterprise, and other people would likely become deceived. Data gathered outside in connection to Defendants' app and app site's contents. **Former statement, above;** The December 06, 2016 statement conveys a different source designation, as the statement represents functional related aspects, features, parts in connection to "Calendar Call". U.S. Trademarks are to avoid help 'confusion'. U.S. Trademarks are to help avoid "conveying" false designation, false description, the wrong meaning, impression, identifying the true source. U.S. Trademarks are to

help avoid name, description, which ‘creates the same general impression in the consuming public’s mind’ (intangible place). To avoid *‘relatedness of the products are sufficient to support confusingly similar’*. To help avoid, *‘a likelihood of confusion would exist as to the source’*. Conveying or misrepresenting the wrong source of the product. **PLAINTIFF’S EXH. “P”** evidenced by afore mentioned Defendants’ allegations, legal representations and statement. Defendants have been continuing to engage in the act which causes violations; namely, but not limited to, the *‘relatedness’* disjunctive prong test of the name and the U.S. Trademark registered having likelihood to *‘Convey a similar general meaning and produce the same mental reaction’*. (Ref. U.S. Trademark site, *BasicFacts.pdf*) The quotes were from Defendants’ legal representatives. Plaintiff’s alleged Defendants’ U.S. Trademark infringement *‘relatedness’* is foreclosed by Plaintiff’s product, U.S. Patent source designation, and the U.S. Trademark Official Final Description part and parcel connecting the intellectual property, the art, each published for opposition and in The U.S. Patent and Trademark Office official records.

**186.** September 06, 2016 Defendants’ SAP, *et al.* e-mail stated in a reference to Plaintiff Kaniadakis’ U.S. Trademark infringement the

following;

**a.** By this date Defendants' records have evidenced that a product was "developed", published publically, and Defendants November 09 letter stated that they had **["] … dubbed… ["]** and applied the commercially branded name labeled as, "Calendar Call". September 06, 2016 email says;

**["] …nor are any such products in development. ["]…**

**b.** Plaintiff alleges misuse. However, Defendants made legal representations, December 06, 2016 and elsewhere, which can be construed as legal notice to the Plaintiff. Defendants' legal statement documented "use" evidenced by Defendants' following legal document and/or notice related "use". Even if a theory or allegations relating to "single use" is believed;

**["] … only <u>use</u> of "Calendar Call" occurred during the TechCrunch Hackathon … ["]**

Defendants did not address their *misuse* of Plaintiff Kaniadakis' "Calendar Call" name nor did Defendants' express being apologetic. Defendants' SAP *Officer, V.P. and Head of Corporate Legal*, now as SAP *Senior Vice President, Legal*, alleged that their "Calendar Call" app was in fact a ***"developed application and use in the hackathon event"***. By contrast, to

statements made by subsequent named legal representatives, as with the statement related above September 06, 2016. One of five (5) SAP legal representations was asserted by Defendant SAP, *et al.*

**187.** Plaintiff Kaniadakis stressed an importance about a Defendant's promise to "formalize" letter. Plaintiff's documentation stressed he repeatedly wanted to confirm what Defendants alleged as "proper next steps" including, but not limited to, in conjunction to Defendants' alleged proposed DMCA action. DMCA form could only be delivered to proper owner of the copyright material with alleged infringing U.S. Trademark content. September 06, 2016 SAP Defendants' third (# three) legal representative, among the history of at least five (5) other SAP Defendants', at least one alleged the following;

**["] … To the best of our knowledge, TechCrunch is the owner of the film clip… ["]**

Plaintiff Kaniadakis' documented heretofore his concerns that there might be evidence of another Defendant and/or responsible party. A reference is made back to Plaintiff Kaniadakis' first kind letter and constructive Notice to Defendant SAP, *et al.* on June 24, 2015 wherein Plaintiff Kaniadakis referenced "*Sawhorse*" among his other concerns, which the Plaintiff's

expressly requested SAP to marshal discovery of documents, channeling, discovery factual matters and legal matters, and for SAP to propose a time frame to cease the infringement.

**188.** Plaintiff alleges Defendants continued a pattern to cover up or to make false or misleading legal statements, and Defendant SAP made on at least two (2) facts. Defendants' purported misrepresentations to Plaintiff in writing on Official stationary and letter head to at least the Plaintiff Kaniadakis on two (2) additional sets of dates. One set of alleged Defendants' second side-by-side Defendants' misleading reports and/or misrepresentations were sent *via* physical mail to Plaintiff illustrative of;

**a.** On **July 31, 2015** Defendants' Officer, Vice President and Head of Legal as alleged in complaint;

**b.** On **April 21, 2016** Defendants' letter as alleged in complaint;

**c.** On **September 06, 2016** Defendants' letter as alleged in complaint;

**Above;** At least one (1) of referenced said referenced documents were purportedly addressed and/or copied to members of The Executives Boards of Directors, Defendants;

On July 31, 2016; **["] … <u>any</u> evidence of use of such name by**

**Concur outside of this event which could lead to a claim of misuse … [“]** (underscored emphasized part of statement was as given here by Defendants);

On April 21, 2016; **[“] …was removed… [”]** and **[“] … we are not aware of any current use of Calendar Call”… [“]** stated in the past tense, respectively. Defendant SAP later would carry on as follows;

September 06, 2016; **["] … only use of “Calendar Call” occurred during the *TechCrunch* Hackathon … ["]** (Plaintiff’s emphasis added).

**189.** Plaintiff Kaniadakis’ documentation clearly identified Defendant VERIZON, *et al., viz.* TECHCRUNCH’s involvement and online infringing content, including but not limited to, electronic data, domain related names, material in complaint. Defendants in identified at least one (1) other connection to Plaintiff Kaniadakis’ infringement concerns as Defendants alleged with the following;

**[“] … created a name to submit draft of the application via the Challengepost site … [“]**

Thereby, Plaintiff asserts and later in fact discovered that according to Defendant’s there were *at least three (3) application sites* “outside of this

event" (apps' use and apps' misuse) of Defendant TECHCRUNCH and TECHCRUNCH app site. *Ref.* **PLAINTIFF'S EXHS. "G"** and **"Y".** Defendant SAP *Vice President and Head of Corporate Legal* represented in a later documentation identified a web site application still different than as stated **a.** on **July 31, 2015, above**. Defendants SAP; **b.** on **January 18, 2016** changed to as "Senior Vice President, Legal", as the following;

**["] … was removed from hacker website DevPost site … ["]**

Plaintiff and Defendants according allegedly identified the name in connection to, including but not limited to, the following;

**i.** *Microsoft's "Outlook Calendar"* application (app), in Defendants' reference **July 31, 2015** V.P. letter https://products.office.com/en-us/business/office ;

**ii.** **July 31, 2015** as *ChallengePost* hacker app site (many as not secured socket links); http://welcome.challengepost.com/get-apps-built-on-your-platform/ ; http://challengepost.com ;

**iii.** **January 18, 2016** *"DevPost"* hacker website (app) pointing to; https://devpost.com/ ;

**iv.** TECHCRUNCH event, app, and related content pointing to

connections, including but not limited to;

https://techcrunch.com/video/calendar-call/518803559/

**v.** Blind pointing to or mask forwarding data, content, apps, material to Plaintiff's allegations against Defendants' infringement, including but not limited to, various (plurality) of sites, applications and apps, sponsors, associations, "created" by Defendants' act(s) in connection to the name "Calendar Call" and related content material to Plaintiff's complaint.

**190.** Defendants' July 31, 2015 statement finds evidence *"outside of event"*. Defendants' added the sites, in addition to Plaintiff's identified apps in connection to Defendants named heretofore in complaint.

**191.** Defendants' letter dated **July 31, 2015** and in a statement **(top of page two, p. 2**) of Defendants' said letter **PLAINTIFF'S EXH. "Y"** obviated products in connection to the name and content "Calendar Call". "Challengepost.com" redirects and connection(s) engage with what is called masks forward electronic data and link pointing to https://devpost.com/ site. Other domain related names, including but not limited to, the following pointing and/or identified in connections to app resources;

https://salesforce1million.devpost.com/

**192.** Defendants "single" act has begun amassing a tree of false designations including but not limited to sponsors, ads, and other false connections to digital material involving at least one (1) act and engaging the name "Calendar Call" a number of times and dates among other geographic locations, evidence of physical development presence, with an online cyberspace presence thereof, and Plaintiff's complaint including that the Defendants continued engaging the name "Calendar Call" causing various acts of U.S. Trademark infringement against Plaintiff Kaniadakis demonstrated as outlined herein.

**193.** A *digital footprint* or *digital identity* is theoretically an electronic track leading to the source. A digital footprint or digital identity is essentially made tantamount to ones' trademark to identify the source. In this instant case Defendants' act is essentially causing harm with the digital trail tending to point and navigate the public away from the source, the designation, to various popular general resources referencing Plaintiff's trademark, "Calendar Call". Thereby, Defendants' act was among some of the first steps towards Defendants continued movement forward publishing and the data acts to cause acts of reducing

(disadvantaging) Plaintiff Kaniadakis with each digital impression from the public. Defendants' misleading impression and connections to said digital footprint and would manage to be forever increasing Defendants' said digital identity in false connection to Defendants' name "Calendar Call". An act misleading the name "Calendar Call" in connection with Defendants' powerful multiplier by including false designation(s). Plaintiff's digital identity, with respect to Plaintiff's U.S. Trademark and intellectual property, is caused harm in association with Defendants' act including other apps like ads, promotions, videos, among other ongoing published digital content or media.

**194.** Defendants, AOL, TECHCRUNCH, *et al.*, essentially assert its "First Amendment Rights" (speech, freedom of the press). Plaintiff's belief that a basis under this authority still requires due process of law and proof against Defendants' liabilities. Defendants' *digital* publications. Even if in this instant case the content involving Defendants online publication page and segment at issue are deemed as reporting, printed "press" or reported "speech" along with promotion, advertising, and other reporting services. Defendant SAP, *et al.* was the sponsor of the event and promotional sponsor of the entire online Defendant VERIZON, *et al.* site.

Upon information and belief that by virtue of asserting ones' *First Amendment Right* as a basis under our U.S Constitution does not bar Defendants' from liability, and as Defendants have alleged on a basis of Plaintiff's complaint. Or, Defendants' that use and assert these Rights, including holding public speech, press and other freedoms, immune from accountability of other laws, rules and regulations or free from liability actions against the Rule of law and as alleged in complaint.

**195.** Plaintiff's belief that Defendants cannot hide under a veil or coat tail and assert First Amendment Rights under co-Defendants and as alleged in complaint.

**196.** **EXHS. "Q"** Plaintiff Kaniadakis' mail by U.S. Certified mail with Return Receipts letters, license fee arrangements, demand, from his first constructive Notice to Defendants, June 23, 2015 (year 2015) to November 01, 2016 (year 2016).

**197.** **PLAINTIFF'S EXHS. "Q"** September 22, 2016. The Plaintiff's September 22, 2016 letter alerted Defendants about Plaintiff's summary and outlined concerns, Bad faith, §§ 512 f (2), other acts and case law attached to said Plaintiff's letter mail to Defendants.

**198.** **PLAINTIFF'S EXHS. "R" and "S"** November 01, 2016. The

Plaintiff's electronic mail/message, November 02, 2016 and Plaintiff's Notice dated November 01, 2016, The Notice to Comply, Cure, Quit, was mailed and referenced each the Defendants. Each page of said Notice has applicable referenced sections in reference to each the Defendants, **SAP, *et al.*** and co-Defendants as, VERIZON, *et al.* and obviated, to execute and return said November (2016) Notice to Plaintiff Kaniadakis.

**199.** **PLAINTIFF'S EXHS. "T"** November 22, 2016 letter. The Plaintiff's November 22, 2016 letter alerted Defendants about Plaintiff's summary and outlined concerns, Bad faith, §§ 512 f (2), other acts and case law attached to said Plaintiff's letter mail to Defendants. Plaintiff's said November 01, 2016 Notice was to help as an instrument for each the Defendants' call to an end from infringement and/or incurring and causing another term and three (3) year license renewal. Plaintiff's belief that Defendants' answer and intent finally did not actually become most indicated until November 14, 2016, **PLAINTIFF's EXH. "O"**, with Defendants' expressed alleged intention not to abide and continued on practicing the art, publishing the art and producing dynamic content about said developed app and named app site using commercial branding Defendants' product, and Defendants continued alleged violations in

complaint.

**200.** Plaintiff's Notice to Comply, Cure, Quit, to Defendant VERIZON, *et al.* at **PLAINTIFF'S EXH. "U"**, and mailed and cross-referenced with respect to each the Defendants' physical addresses. As Defendants continued engaging the Plaintiff's licensable material, intellectual property and related content. Plaintiff has mail and sent letters with belief of some added risks or warnings to Defendants about;

**a.** end of term and said Notice liabilities in the event Defendants continued engaging "Calendar Call" and related content to Plaintiff's intellectual property;

**b.** Section 512 f (2) violations, bad faith, unfair competition, would be intentional risks, violations, and other acts, many outlined in complaint.

Defendants would press and forge forward. Defendants included an assertion or belief that SAP has expressed freedom from liabilities/violations under their Rights which included at least (1) one additional basis of alleged online cyber and U.S. Trademark acts. Defendants' SAP stated allegations to have been given some rights to protection under expressing some stated **["] … artistically relevant… ["]**

Rights or so called said rights under some given as a theoretical basis of an *artistic license*. **PLAINTIFF'S EXH. "Y".** Defendants asserted allegations were made on **July 31, 2015** made by Defendant SAP, *et al.* Officers' and made Defendants' legal representations. Despite Defendants given further constructive Notices, the Defendants elected to continued engaging alleged violations and added other acts against the law, subsequent September 22 and November 22, 2016 warnings, said Notices about end of term, and liabilities in the event Defendants continued engaging "Calendar Call" and related content to Plaintiff's intellectual property.

**201.** **PLAINTIFF'S EXHS. "V"** Defendant's AOL, VERIZON, *et al.* by evidence of only two (2) e-mail responses sent in regards to Plaintiff's U.S. Trademark infringement concerns. Plaintiff's physical mail sent to Defendant "AOL", two (2) N.Y., N.Y addresses, and to its SAN FRANCISCO, CA from June 23, 2015 (year 2015) extending through to November 01, 2016 (year 2016). Defendants located, and revealed later in history, a third (#3) physical address, Dulles, V.A. Irrespective of co-Defendants' alleged agreement(s), Defendants' VERIZON answer remained as VERIZON, *et al.* Defendants alleged back on **December 08,**

**2016**. Plaintiff's composite of letters and email from Defendant VERIZON, *et al.* at **EXH. "T"**. Plaintiff's Notice at **EXH. "U".** As Defendants continued engaging the Plaintiff's licensable material, intellectual property and related content. Plaintiff has mail and sent letters with belief of some added risks or warnings to Defendants about;

**a.** end of term and said Notice liabilities in the event Defendants continued engaging "Calendar Call" and related content to Plaintiff's intellectual property;

**b.** Section 512 f (2) violations, bad faith, unfair competition, would be intentional risks, violations, and other acts, many outlined in complaint.

Defendants press forward. Defendants expressing freedom on a basis of Defendants' alleged freedom from violations/liabilities under our *First Amendment of The U.S. Constitution* Rights, freedom of expression, or Right of free speech and/or press as reporters. In a reference to allegations Defendants' VERIZON, *et al.* allegations were made on **July o6, 2015** and Defendants evidently stand on such an included assertion or basis on **December 08, 2016** *viz.* "AOL" representations, as *"publishers"* and alleged such online cyber act invokes its immunity to **["] … constitute …**

**["] … ["] News Coverage ["]**. Despite Defendants given further constructive Notices, the Defendants elected to continued engaging alleged violations and added other acts against the law, subsequent November 22, 2016 warnings, end of term and said Notice liabilities, in the event Defendants continued engaging "Calendar Call" and related content to Plaintiff's intellectual property.

**202.** Documents demonstrated that Defendants addressed by Plaintiff were cross-referenced. **PLAINTIFF'S EXH. "V"** also shines some light on certain evidence, **EXHS. "T", "U"**. Whereas, Defendants' communications were essentially unilateral and bidirectional relative to Defendants' alleged agreements, Defendants' concerns about infringement related matters, and Defendants' roles of intent to resolve matters in complaint.

**203.** **PLAINTIFF'S EXHS. "W"** Defendant's SAP, *et al.* Official documents, letters in reply and some answers to Plaintiff Kaniadakis' U.S. Trademark infringement concerns.

**204.** **PLAINTIFF'S EXHS. "X"** Defendant's SAP, *et al.* alleged for Plaintiff to make contact to Defendant VERIZON, *et al.* pursuant to Defendants' alleged intellectual property resolution to U.S. Trademark

concerns. Plaintiff contacted "ALEXANDRA M. AMES, Senior Marketing Manager | AOL Tech, Email: alexandra@techcrunch.com". Defendants' AOL, TECHCRUNCH, Ms. Alexander Ames says she **["] … has nothing to do with this … ["].** Despite Defendants' SAP Senior representations as the person for Plaintiff Kaniadakis to relay upon at their co-Defendants at VERIZON, *et al.* Defendant SAP, et al. also proffered that "Matt" as the person for Plaintiff Kaniadakis to relay upon at their co-Defendants at VERIZON, *et al.* Likewise, as of the date filing instant case, "Matt", has not made contact with Plaintiff Kaniadakis pursuant to Defendants' alleged DMCA and "take down" scheme with related alleged acts set forth in complaint. The record will show a number of written requests were sent to "Matt" at **["]…** matt@techcrunch.com **… ["].** Defendants' conduct was demonstrated as "Matt" conducted corporate affairs by ignoring all from Plaintiff Kaniadakis.

**205.** Plaintiff's documented other distant past attempts trying to navigate and channel Plaintiff's concerns about Defendants' U.S. Trademark infringement. **PLAINTIFF'S EXH. "X"**.

**206.** **PLAINTIFF'S EXH. "Y"** Defendant SAP, *et al.* letters mailed to Plaintiff. Plaintiff's reply mail to Defendant SAP, *et al.*, Defendants' SAP

Executive Board of Directors has been the point of contact for Plaintiff from the beginning and throughout. **EXHS. "Y"** representative of the numerous letters and electronic mail/message written communications mailed and sent by U.S. Certified mail with Return Receipts Requested and U.S. Express mail (available for proof) mailed to Defendants in said factual account and grounds for Plaintiff's legal basis and as set forth in complaint. Including, but not limited to, **EXHS. "T", "N" and "Q",** September 22, 2016, November 09, 2016 and November 22, 2016, to Defendants, VERIZON, *et al.* and SAP, *et al.*, respectively, and sent to SAP *via* several electronic mail/messages, containing representative exhibits that the Plaintiff's addressed Defendants' wrongful conduct, pattern, other bad acts, and acts against the law concerns pursuant to Plaintiff's U.S. Trademark concern. Plaintiff continued his ongoing documentation about Defendants' unlawful acts and concerns of related Defendants' unlawful intent. Acts against the Plaintiff other than merits of the parties' U.S. Trademark concerns.

**207.** **PLAINTIFF'S EXH. "Z"** SAP Defendants' past Executive Officer, now with *Salesforce, Inc., Dream force* and other event announcements.

**208.** If Defendants early on claim that Defendants to have entered an agreement under "FRE 408", then Plaintiff's belief that invoking such was an act which was not the understanding of the Plaintiff.

**COUNT I - TRADEMARK INFRINGEMENT AGAINST DEFENDANTS PURSUANT TO 15 U.S.C. §1125(a)**

**209.** Plaintiff incorporates by reference the allegations in the above paragraphs as fully set forth herein.

**210.** By virtue of its use, Plaintiff Kaniadakis is the owner of, and he has established valuable goodwill in, the Plaintiff's Registered Mark, called, "Calendar Call" as used throughout The United States of America and internationally in connection to computing equipment program applications prior to Defendants' misuse, misrepresentation, misleading others of Plaintiff's Registered Mark. By virtue of Plaintiff's Mark "Calendar Call" being applied to Plaintiff's user interface or graphical user interface (UI, GUI). By virtue of Plaintiff's Mark "Calendar Call" being applied to Plaintiff's website content and in connections to Plaintiff's other public sites under his control, *YouTube, Facebook, Twitter, Linked-in, Google Plus,* and miscellaneous website applications, including Defendants' website program application posts and blogs, and among other places. Plaintiff applied the official symbol material to use of

the registered U.S. Trademark and in connection to complaint.

**211.** Upon Plaintiff's belief and understanding safe harbor provisions do not provide any protection to Defendants against U.S. Trademark infringement under **Section 230 of The Communications Decency Act (CDA § 230). CDA § 230** protects website owners from many claims based under Defendants' hosted content, user comments, user-generated, and other third party content. However, safe harbor and **CDA § 230** does not apply to "intellectual property" claims, **47 U.S.C. 230 230 (e) (2).** Therefore, Defendants should not be provided protection against U.S. Trademark claims alleged in complaint.

**212.** Defendants' commercially branded, published online, developed, made a product, among other said concerns, applied the name "Calendar Call", continued to publish and update referenced content in connection to the infringing trademark. The fact that Defendants apply a commercial brand makes content likelihood to cause marketing deception. Commercial labeling act can lead (mislead) content away from a domain of academic or contest reasons into the domain competing in market place.

**213.** Defendants' content with description is remarkably the same or

identical in connection to 'relatedness of the products are sufficient confusingly similar', technical space and market, as Plaintiff Kaniadakis offers under the Plaintiff's Registered Mark and Official *Final Description* called, "Calendar Call"; namely, the computing program application ("app").

**214.** Defendants' continued publically broadcasting an "app" that has features and functions which are confusing similar or in rear resemblance to elements or aspects of the Plaintiff's "app". The description and name is confusingly both similar to the Plaintiff's Registered Mark.

**215.** Defendants' continued engaging and misusing the name "Calendar Call" and this is misleading the public. Defendants' act of identifying the "Calendar Call" name with Defendants' content and video presentation of the "app" is misusing, misleading and misrepresenting the Plaintiff's use of Registered Mark called, "Calendar Call", in connection to Plaintiff's products, Plaintiff's U.S. Patent and U.S. Trademark. Defendants' act has likelihood to cause to deceive, confuse, mislead, the public at large, prospective purchasers, commercial purchasers, consumers and enterprise level markets, sponsors, vendors, distributors in this same technical space, as well as, official records and offices against Plaintiff Kaniadakis'

pursuits competing for the same. Defendants' likely to cause said people, companies and entities, among others, into believing that Defendants' content in connection to Defendants' product emanate from, are authorized by, and/or are in some manner affiliated with or endorsed by or with official documents, intellectual property, Plaintiff's U.S. Patent and U.S. Trademarks.

**216.** Defendants' video presentation and website content identifying "Calendar Call" has likelihood to be misleading and to cause misrepresentation of the Plaintiff's video presentations and website content in connection to Plaintiff's product using such content and media for promoting, advertising, instructional and exclusive Right teaching the art of his U.S. Patent source's products in connection to Plaintiff's Registered Marks.

**217.** Defendants' content gains advantage by offering and receiving revenue commercial advertising space in connection to Plaintiff's "Callendar Call" Mark. This could cause Plaintiff's disadvantage competing for advertisement revenue in connection to Plaintiff's promotional videos and among other presentations.

**218.** Defendants' unauthorized misuse in commerce is an infringement of

Kaniadakis' Registered Mark in violation of **15 U.S.C. §1114(1).**

**COUNT II – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER FLORIDA COMMON LAW AGAINST DEFENDANTS**

**219.** Plaintiff incorporates by reference the allegations in the above paragraphs as fully set forth herein.

**220.** Defendants' acts as alleged herein constitute trademark infringement as unfair competition in violation of the common law of The State of Florida.

**221.** By virtue of its online presence including, but not limited to, advertisements, interstate commerce, distribution, in promotion materials, Plaintiff has afforded rights under common law throughout The United States. Accordingly, Defendants' online presence for the same extends Plaintiff's rights against the Defendants.

**222.** Plaintiff Kaniadakis is the owner of, and he has established valuable goodwill in, the Plaintiff's "Calendar Call" Mark as used in connection to said program applications. By virtue of its online content, videos, instructional videos, promotional videos, and advertising Plaintiff's use of "Calendar Call" in public domain, along with website domain names "Calendar Call" and "Callendar Call" with variations representative of

Plaintiff's Mark. By virtue of Plaintiff's Mark "Calendar Call" being applied to Plaintiff's website content and in connections to Plaintiff's other public sites under his control, YouTube, Facebook, Twitter, Linked-in, Google Plus, and miscellaneous posts, blogs including Defendants' articles and among other places. Plaintiff applied the official constructive notifications as "Registered U.S. Trademark" and as encircled letter ["] ® ["] symbol material to use of the registered U.S. Trademark and in connection to the material, which was registered and material to complaint. Plaintiff Kaniadakis' numerous other Official documentations evidences his prior use and his actual use including screen shots, U.S. Copyright Office documents of his entitled works, U.S. Patent Office documents.

**223.** Defendants acts as alleged herein and in considering Defendants' sheer size, prominence, exposure, and free available public access of their website application in the market causes disadvantages over Plaintiff's applications. Despite Plaintiff's exclusive Rights in the market including Plaintiff's exclusive Rights to exclude anyone and anybody *viz.,* connection to and under Plaintiff's U.S. Patent Rights part and parcel to Rights under named Registered U.S. Trademark in complaint, describing

a commercial application of Plaintiff's integral to his intellectual property including under Florida Common law Rights.

**224.** Plaintiff Kaniadakis has expended significant resources in developing, promoting, advertising and marketing sale of intellectual property to gain livelihood, innovation in creating a consumer and enterprise demand for such intellectual property in The District, State of Florida and elsewhere in The United States of America and internationally.

**225.** Upon information and belief, Defendants' acts of unfair competition are willful and wanton, as well as intentional and malicious.

**226.** Defendants' acts constitute unfair competition and will, unless enjoined by This Court, result in the destruction of goodwill in Plaintiff's intellectual properties to the unjust enrichment of Defendants.

**227.** Plaintiff Kaniadakis has been harmed by Defendants' pattern and course of conduct or practice as alleged above in an amount not yet fully known.

## COUNT III – UNFAIR COMPETITION UNDER THE LANHAM ACT

**228.** Plaintiff incorporates by reference the allegations in the above

paragraphs as fully set forth herein.

**229.** As a result of Defendant' longstanding misuse, alleged misrepresentations and unlawful acts involving trademark law more particularly outlined in complaint elsewhere, advertising, marketing, Plaintiff Kaniadakis' properties have acquired improperly described and wrongfully applied secondary meaning and mislead to Defendants' content, product and services, among the public and Official Offices who have come to identify with Plaintiff's intellectual property, U.S. Trademark and U.S. Patent as evidenced in Official recordings.

**230.** Defendants have willfully misrepresented and continued to misrepresent to the general public that they are Official, sanctioned or sponsored and legitimate intellectual property by Plaintiff Kaniadakis.

**231.** Defendants' pattern and course of conduct or practice constitutes a violation of the law under **Section 43 of the Lanham Act, 15 U.S.C. §1125**.

**232.** Defendants cannot be provided protection under said **CDA §230** against violations of the law and unlawful U.S. Trademark acts under said Lanham Act for the basis of said intellectual property, **47 U.S.C. § 230(e)(2).**

**233.** Defendants have obtained revenue, gains, profits, advantages and unfair advantage over Plaintiff Kaniadakis as a result of their unlawful acts.

**234.** Defendants acts as alleged herein and in considering Defendants' sheer size, prominence, exposure, and free available public access of their website application in the market causes disadvantages over Plaintiff's applications. Despite Plaintiff's exclusive Rights in the market including Plaintiff's exclusive Rights to exclude anyone and anybody *viz.,* connection to and under Plaintiff's U.S. Patent Rights part and parcel to Rights under named Registered U.S. Trademark in complaint, describing a commercial application of Plaintiff's integral to his intellectual property including under said Lanham Act.

**COUNT IV – UNFAIR BUSINESS PRACTICES BAD FAITH ACT UNLAWFUL ACTS AND OTHER BAD ACTS UNDER U.S. COPYRIGHT ACT 17 U.S.C. §512 f (2)**

**235.** Plaintiff incorporates by reference the allegations in the above paragraphs as fully set forth herein.

**236.** Defendants' pattern and course of conduct or practice making written record of false statements to Plaintiff Kaniadakis included Defendants knowingly, knew or should have known, willfully continued

committed alleged acts with the intent to injure Plaintiff Kaniadakis as Defendants' engaged in acts so as to cause to make culpable participants in a scheme to cause *unlawful intent* violations of the law.

**237.** Upon Plaintiff's belief and understanding DMAC and take down notice safe harbor provisions only apply to claims of U.S. Copyright infringement. Defendants cannot be provided any protection, mediation or relief since complaint concerns U.S. Trademark infringement. Defendants cannot be provided or afforded substantial protection, mitigation, relief or substantial offsetting relief under **Section 230 of The Communications Decency Act (CDA § 230). CDA § 230** protects website owners from many claims based under Defendants' hosted content, user comments, user-generated, and other third party content. However, safe harbor and **CDA § 230** does not apply to "intellectual property" claims, **47 U.S.C. 230 230 (e) (2).** Therefore, unlawful conduct and/or acts against U.S. Trademark constitute violation of the rule of law(s).

**238.** Defendants effectuating a *Crossfit* move against Plaintiff Kaniadakis. History will show that case law has exposed such unlawful intent practice. A scheme to induce or effectuate certain Defendant participants and Plaintiff into such an act. The alleged Defendants'

wrongful act was an act to cause unfair business practice, bad faith act and related legal misrepresentations. Defendant SAP, *et al.* was a material participant with instructing, conducting or providing alleged false misrepresentations. *Ref.* **CrossFit, Inc. v. Alvies, No. 13–3771, 2014 WL 251760 (N.D. Cal. Jan. 22, 2014)**.

**239.** Defendants' The Executive Boards of SAP, *et al. viz.,* high level representation, senior legal representatives negotiated with, were engaged and/or were allegedly dealing or making deals with, certain named staff members of Defendants AOL, TECHCRUNCH, INCS. *et al.* to use DMCA and take down Notice Form and documentation on U.S. Trademark complaint.

**240.** Upon information and belief, Defendants' acts constitute an unlawful act are intentional, knowingly, willful and wanton, as well as intentional and malicious against Plaintiff Kaniadakis said goodwill, and history will show Plaintiff's good faith material to complaint.

**241.** Upon information and belief adequate remedy at law for This Court may deem appropriate may be included under law **512 f (2)** provisions and Plaintiff suffers irreparable harm as a result of Defendants' acts. Wherefore;

**17 U.S.C. § 512(f) (1998) provides in pertinent part as follows:**

**(f) Misrepresentations—Any person who knowingly materially misrepresents under this section—**

**(1) that material or activity is infringing, or**

**(2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.**

## COUNTS V, VI, VII – FRAUDULENT MISREPRESENTATION AND SILENT FRAUD

**242.** Plaintiff incorporates by reference the allegations in the above paragraphs as fully set forth herein.

**243.** Defendants' alleged active misrepresentation is demonstrated pattern and conduct.

**244.** Upon information and belief Defendants' Executive Officers, Vice President, made false or misleading legal statements and made on at least two (2) counts misrepresented facts. Defendants' purported misrepresentations in writing on Official stationary and letter head to at least the Plaintiff Kaniadakis on two (2) dates. The alleged Defendants'

fraudulent misrepresentations and silent fraud were sent *via* physical mail to Plaintiff;

**d.** On **January 18, 2016** Defendants' letter as alleged in complaint;

**e.** On **April 21, 2016** Defendants' letter as alleged in complaint;

**f.** Above two (2) referenced documents were purportedly addressed and/or copied to members of The Executives Boards of Directors, Defendants.

**g.** The alleged silent fraud, silent misrepresentation, occurs through Defendant's silence on a key issue. Despite shedding some light on these ongoing alleged unlawful acts and stated concerns with Plaintiff's **March 21, 2016** letter.

**245.** On and around **December 08, 2016** Defendants evidenced an alleged Third Count of Fraudulent Misrepresentation. False, misleading, misrepresentation statement of facts have been made, as alleged, by one Defendant party to another party, which has the effect of inducing that party into the contract. As Defendants purported some agreement with co-Defendant alleged "proper next steps" in order to induce Plaintiff Kaniadakis to carry out an unlawful act involving co-Defendant AOL, TECHCRUNCH, *et al.*, participants in SAN FRANCISCO, C.A. SAP

mails its first physical letter, November 09, 2016, and addresses it to *different participants* at AOL, Dulles, VA. November 14, 2016 Defendant SAP dropped out. December 08, 2016 Defendants' e-mail is from an "AOL Trademark Team", and the e-mail made reference to Defendant SAP, *et al.* "original" November 09, 2016 physical letter and a copy of the same this AOL team received, which Plaintiff Kaniadakis mailed to Defendant VERIZON, *et al.* AOL was not willing to remove the content. AOL was not in any reference to DMAC and take down resolutions.

**246.** Defendants SAP's November 14, 2016 is the e-mail which SAP attached the *first* (and Plaintiff's belief only) known *physical letter* to participants at AOL, Dulles, VA. This date has significance, since it was essentially on this same date SAP dropped out. SAP existed from the scheme.

**a.** After Defendant SAP finally the sent an email to the Plaintiff with attached November 09, 2016 AOL letter;

**b.** SAP sends physical mail to different AOL participants.

SAP simultaneously leaves the scene. A scheme for an unlawful act and unlawful intent that Plaintiff Kaniadakis believed SAP, *et al.* had some role in starting and/or actively participating, enabling, and

continue planning with SAP giving AOL, TECHCRUNCH allegedly the "proper next steps";

**c.** Defendant SAP November 09, 2016 letter was silent relative to afore said mentioned Defendants' U.S. Copyright Act, DMAC and take down, agreement(s) and/or Defendant reference(s) of afore mentioned "proper next steps";

**d.** Defendant SAP November 09, 2016 letter was silent, and letter was only sent to Plaintiff Kaniadakis after the fact and without evidence of Defendants' alleged Defendant reference(s) of afore mentioned "proper next steps" or all parties, Defendants' proposed agreement to remove content and Plaintiff's U.S. Trademark infringement concerns in question.

**COUNT VIII – BREACH OF CONTRACT**

**247.** Plaintiff incorporates by reference the allegations in the above paragraphs as fully set forth herein.

**248.** Upon information and belief oral contract agreements are legal in The State of Florida. At least one (1) contract agreement with Defendants was subsequently evidenced in writing.

**249.** Upon information and belief Defendants were agreement at some

time and date that this is a U.S. Trademark matter and Plaintiff Kaniadakis owns U.S. U.S. Trademark registration # 4,469,219, the mark, officially issued in The United States Patent and Trademark Office.

**250.** At least one (1) contractual relationship existed between Defendants, The Executive Boards of Directors', SAP, *et al.* and routinely governed its authority with at least one (1) Senior legal representative in this matter, who had given their oral and at least one (1) written agreement(s) to Plaintiff Kaniadakis. Defendant SAP, *et al.* would draft at least one (1) and would execute to "formalize" at least one (1) letter. As outlined from the complaint the promise to write, to send and to mail letter(s) essentially may be given as follows;

**a.** Letter(s) to have been sent on official SAP stationary, letter head and physically mailed to Plaintiff Kaniadakis;

**b.** Defendant SAP, *et al.* subsequently reneged and broke at least one (1) contract agreement with Plaintiff Kaniadakis, and Defendants were substantially without a stated legitimate legal and lawful basis or reason, excuse, or basis for the breach of contract.

**251.** Defendant SAP, *et al.* represented in writing its later intention that

Defendant SAP would not write or send and produce the "formalize" the letter to Plaintiff Kaniadakis, in the Plaintiff's intended alleged sequence and timing, and despite the letter of agreement was agreed to Plaintiff Kaniadakis from the Defendant's e-mail.

**252.** Despite Defendant SAP, *et al.* given a letter to Plaintiff, this letter was not as intended by the parties and mutually as agreed to by Plaintiff. This Official letter from Defendant SAP was only addressing the Defendants and co-Defendants concerns and this letter was sent in the physical mail on letter head stationary subsequent to the intended letter of agreement(s) to Plaintiff Kaniadakis. Defendants caused alleged breach of contract, written and oral agreements, damaging the Plaintiff.

**253.** By virtue of Defendant's letter lacking key elements agreed to, which the Defendants represented to the Plaintiff, Defendants allegedly caused harm to Plaintiff by Defendants' breached agreement(s). Defendant SAP, *et al.* allegedly beached as at least one draft and at least (1) official letter of agreement said letter(s) to essentially help substantiate Defendants' SAP, *et al.* legal representative's representations alleged to Plaintiff, and on behalf of their Executive Boards of Directors, Defendants' representations which Defendant SAP addressed and

promised to carry on with and they did not in the sequence or manner of oral and of written agreement(s), material to including, but not limited to;

**a.** Statements of Defendant SAP's position and claimed representations;

**b.** Statements of Defendants in material reference to co-Defendant's alleged position of agreement to carry on with DMAC and/or representations including their co-Defendant VERIZON, *et al.,* namely, AOL/TECHCRUNCH, *et al.,* INCS;

**c.** Statements of believed understandings of the parties, matters of fact and matters of law, which SAP, *et al.* had purportedly made in agreement(s) or had represented in e-mail agreements(s) and in their alleged communications contacting co-Defendant and/or for Plaintiff Kaniadakis;

**d.** Defendants' agreement was breached as Defendants' letter of agreements would not evidence statements agreed to that would state that co-Defendants in question had the true legal authority material to complaint as outlined; and, letter of the agreements could be otherwise allegedly true and reliable despite that Defendant allegedly had essentially no reasonable knowledge of

certain named and/or unnamed staff members participating and/or representing AOL/TECHCRUNCH.

**254.** By virtue of Defendants breach including substance of letter which was essentially pertaining to provide statements of "proper next steps" essentially in an alleged agreement between Defendants; however, Defendants' breached mutual agreement was to remove Plaintiff Kaniadakis' concerns about U.S. Trademark infringement. Instead, Defendants' breach and act removed Plaintiff Kaniadakis, by Defendants' breach of agreement to carry on with the act without mutually agreed upon by Plaintiff Kaniadakis.

**255.** By virtue of Plaintiff Kaniadakis' issue is material to U.S. Trademark matters and Defendants would allegedly agree to an act of another settlement agreement without the letter of agreement(s) caused Plaintiff injury, harm, ensuing unlawful acts. Notwithstanding, Defendants' purportedly proposed DMAC and "take down" DEMAND NOTICE to be executed and sent by Plaintiff Kaniadakis to Defendant VERIZON, *et al.*, more particularly, implied to be sent (only) *via* e-mail attachment. Presumably to be received by some location in SAN FRANCISCO, CA. By virtue of continued co-Defendants with their

Defendants to be evasive-like This Court should deem as conduct as caused said breach agreements as intentional, willful, malicious, deceitful acts. Other conduct as Defendants statements to Plaintiff without an actual physical address, last name or phone number in connection to the e-mail address to know whether Plaintiff Kaniadakis was in fact “proper steps” sending such Defendants’ alleged agreement under U.S. Copyright legal document, DMCA.

**256.** Defendant SAP **November 09, 2016** letter was only sent to Plaintiff Kaniadakis on **November 14, 2016**. This letter sent only by e-mail to Plaintiff, after mailed to co-Defendants, and not as the in terms of letter of the agreement. A letter was in fact sent to Plaintiff. By contrast, Defendants’ act was in breach of alleged mutual agreement of Defendant SAP and Plaintiff’s agreement by virtue of a relatively base-less letter; breached the agreement as this said letter was among other concerns, was devoid following established facts, was devoid of key components and outlined reasons;

**a.** Defendants’ letter was evidenced after the fact to different participants;

**i.** Defendants’ devoid of proposed plan with Plaintiff and;

**ii.** Defendants' devoid of proposed plan including *other* AOL participants had been engaged by SAP, *et al.* and Defendants agreed to a plan of action. Even in consideration that a letter was sent to *different* Defendants AOL participants, and;

**b.** Defendants' letter was without evidence of Defendant referenced terms of afore mentioned "proper next steps" or in a reference to an action taking the U.S. Copyright Act, DMAC, take down or any other related alleged "steps".

**c.** Defendants' letter was without evidence of Defendants' proposed agreement to remove content by previous Defendants' at AOL to resolve Plaintiff's U.S. Trademark infringement concerns in question.

**257.** Defendants' **November 09, 2016** letter, allegedly breached the alleged agreement as said dated Defendants' letter was silent to speak of evidence *proposed by* or Defendants *proposed with* any of the *other* co-Defendants' AOL, TECHCRUNCH, *et al.* with SAP, *et al.* Defendants' said dated letter had no evidence of Defendants' mutual consents and agreement(s) to remove the content and/or agreement in use of DMCA, "take down" as alleged by Defendants' representations previously to

Plaintiff Kaniadakis; in an alternative count, Defendants'' said silent representation and said breach with said Defendants' dated latter caused alleged misrepresentations or silent fraud in complaint and in three (3) **COUNTS V, VI and VII**.

**258.** Defendants, by contrast, made material representations to Plaintiff *before the fact*, so before said dated letter was ultimately sent to Plaintiff Kaniadakis caused Defendants' breach, more particularly herein as COUNT VIII; in an alternative, Defendants' material representations *after the fact* whereby Defendants' alleged e-mail contact alleged agreement with co-Defendant involving DMCA or "take down" act, with more particularity as previously alleged in complaint and in **COUNT IV**. Upon Plaintiff's belief and understanding by virtue that an unlawful act would not become binding contract agreement and Defendants breeched alleged misrepresentation was in effect breached in the alternative herein.

**259.** Upon Plaintiff's belief and understanding, in an alternative, by virtue of a letter devoid of mutual intent by the parties in relation to proposed Copyright Act plan to remove an otherwise lawful act, and by virtue of a letter received *after the fact* and Defendants' devoid material will be essentially non-binding and an unlawful act against the Plaintiff.

**260.** Plaintiff's alleged Defendants' breach of contract of the contractual relationship between Plaintiff and Defendants, and Defendants were without a stated legitimate legal excuse, reason, or basis for the breach of contract. Plaintiff has suffered damage and injury as result of Defendants' breach of contract in an amount not yet fully appreciated.

**COUNT IX – TORTIOUS INTERFERENCE WITH CONTRACT**

**261.** Plaintiff incorporates by reference the allegations in the above paragraphs as fully set forth herein.

**262.** By virtue that Defendants, at least in part, twisted the course from U.S. Trademark registration # 4,469,219, the mark, against Plaintiff's matter with tortious interference as a matter involving a U.S. Copyright Office Act.

**263.** A contractual relationship existed between Defendant The Executive Boards of Directors', SAP, *et al.* governed its relatively high level representative, its "Senior" Intellectual Property legal representative in this matter, who had given their oral and written agreements to Plaintiff Kaniadakis that SAP, *et al.* would draft and would execute to "formalize" a letter and to send in the physical mail to Plaintiff Kaniadakis. Upon information and belief that; **a.** Defendants would carry on to alleged acts

and/or interfere by contact with co-Defendants concerning the U.S. Trademark infringement matter; **b.** Defendants represented Plaintiff as Demand; **c.** Defendants represented Plaintiff's case was material to U.S. Copyright Act without a mutual agreement with the Plaintiff and all Defendants; **d.** Defendants received "take down" action and/or instructions.

**264.** Defendants said interference by virtue of allegedly making contact on matters without including the Plaintiff. Upon information and belief that; **a.** Defendant SAP, *et al.* made contact and communicated "proper next steps"; **b.** According to Defendant SAP's representations and quoted statements, co-Defendant AOL, TECHCRUNCH, *et al.* INCS, staff members allegedly to agreed.

**265.** Despite the fact Plaintiff Kaniadakis questioned lawfulness of DMAC and said "take down" Demand Notice on complaint's U.S. Trademark matter and disagreed with Defendants' acts set forth. Upon information and belief that; **a.** Defendants evidently continued to carry on with the act(s) despite Plaintiff's alleged adverse written and oral disagreements; **b.** Defendants would not evidently carry on by shedding light on Defendants' alleged mutual material agreement(s) allegedly made

with co-Defendants together in this matter and/or on this issue in the complaint.

**266.** Despite the fact Plaintiff Kaniadakis was not allegedly receiving alleged Defendants' communications together with or separately by and/or from the parties including the Defendants, VERIZON, *et al.*, AOL, TECHCRUNCH, INCS, *et al.* SAP, caused said interference in part. Upon information and belief that; a. Defendants essentially were under some notion that Plaintiff to evidently relay upon information and belief; **a.** as Defendants purported *via* Defendant SAP's legal representative and representations or misrepresentation(s) causing interference; **b.** as Defendants were under some agreement from merits of Plaintiff's U.S. Trademark infringement concerns between the parties material to Plaintiff's Kind Constructive Notices to Defendants on U.S. Trademark infringement matters; **c.** as Defendants interfered with said Notice about merits of U.S. Trademark awaiting This Court's adjudication to Notice of Defendants' alleged "Cease and Desist", Demand type Notice, alleged "take down" and DMCA; **d.** as Defendants would allegedly interfere to evidently wrongfully alter facts and/or legal basis by way of; **i.** evidently wrongfully altering the Plaintiff's true legal basis or grounds; **ii.**

wrongfully altering the Plaintiff's true posture, "Demand", and other factual standing of the Plaintiff.

**267.** Defendants continued engaging in alleged interference as allegedly Defendants knew or should have known that the scheme to send electronic mail or to otherwise mail DMAC and allegedly send any misrepresentation including alleged "take down" Notice was unlawful in context involving Plaintiff's merits of complaint on his U.S. Trademark matter. Defendants' interference act(s) were *despite* the Plaintiff's Right to assert grounds on any merits of his U.S. Trademark to negotiate any agreement with co-Defendants or *besides* the Plaintiff's Right to assert any merits of Plaintiff's U.S. Trademark infringement matter and negotiate an agreement with co-Defendants in terms of trademark infringement and stake his claim in This Court.

**268.** Defendant VERIZON, *et al.*, AOL, TECHCRUNCH, INCS, *et al.* knowingly or unknowingly participated in a scheme as alleged with SAP, *et al.* in complaint on Plaintiff's U.S. Trademark matter. The result was interference in negotiating the agreement to settle and/or Plaintiff's Right to continue to license *at least one (1) contract agreement* consummated with Plaintiff Kaniadakis' registered U.S. Trademark to Defendants *SAP,*

*VERIZON, Inc.'s, and among others*.

**269.** Defendant SAP, *et al.* caused alleged said interference harm to Plaintiff Kaniadakis by unknown stated "steps" and questionable "next steps" as Defendants' alleged "proper next steps" to co-Defendants including, but not limited to, Defendants' alleged steps of sending DMCA and take down notice to co-Defendants and evidenced, in part, the redacted DMCA form sent to the Plaintiff to parties on a U.S. Trademark matter.

**270.** Defendants SAP, *et al.* and Defendants' participants alleged said interference caused injury and harm to Plaintiff. As a result Defendants caused interference;

**a.** As a result of taking improper "steps" to change the terms of this matter ***from*** a U.S. Trademark resolution and lawful act ***to*** terms of this matter to "CEASE AND DESISIT DEMAND" legal action with co-Defendant AOL, TECHCRUNCH, *et al.*;

**b.** As a result of Defendants' tortious interference causing the relationship of infringement concerns of intellectual property to change Plaintiff's terms ***from*** relatively friendly, kind, non-hostile or cooperative meeting of the minds and lawful conduct

for resolution on U.S. Trademark infringement matters ***to*** the terms of "Demand" and "Cease and Desist" legal action.

**271.** Defendant SAP, *et al.* caused tortious interference with VERIZON, *et al.* proper legal authorities and to properly address Plaintiff Kaniadakis' U.S. Trademark infringement concerns with U.S. Trademark legal pathways to accordingly and rightfully marshal the proper law and legal instruments;

**a.** Defendants were participants to said interference. Defendants turned Plaintiff's good faith and intent and goodwill lawful act *to* Defendants' allegedly a proposed resolution, which complaint alleges in context as unlawful action;

**b.** Defendants were participants to said interference. Defendants turned *from* Plaintiff in a lawful act with good faith and intent and goodwill *to* Defendants' ill will, bad faith acts, and fashioned an action "Cease and Desist" and "Demand".

**272.** Defendants' solicitation has interfered with the contractual relationship between Plaintiff and Defendants SAP, VERIZON, Inc.'s and others. Plaintiff has suffered damage and injury as result of Defendants' tortious interference in an amount not yet fully appreciated.

## COUNT X – ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT AGAINST DEFENDANTS CONTENT PURSUANT TO 15 U.S.C. 1125 (d)

**273.** Plaintiff incorporates by reference the allegations in the above paragraphs as fully set forth herein.

**274.** Upon Plaintiff's belief and understanding safe harbor provisions do not provide any protection to Defendants against U.S. Trademark infringement under **Section 230 of The Communications Decency Act (CDA § 230)**. **CDA § 230** protects website owners from many claims based under Defendants' hosted content, user comments, user-generated, and other third party content. However, safe harbor and **CDA § 230** does not apply to "intellectual property" claims, **47 U.S.C. 230 230 (e) (2).** Therefore, Defendants should not be provided any protection from committing acts against cyber-squatting claims in complaint.

**275.** Defendants trafficking in, using and maintaining internet domain names in connection to "Calendar-Call" Registered Mark. Defendants'. Defendants' online access is making available access by search engines. Defendants' website program application incorporating the similar sounding name called, "Calendar Call", but not limited to, including in Defendants' domain name. Defendants' action causes likelihood of

confusion the Plaintiff's Registered Mark called, "Calendar Call". Defendants' actions causing likelihood of misleading, misrepresenting, confusing the public at large, consumers and prospects, commercial vendors, companies, entities, and enterprise in wholesale and retail markets with Defendants' misuse of the name called, "Calendar Call". Defendant's compounded misuse with use of an act for pointing called creating a 'plug' or 'permalinks' by using the name, among other implementations and/or deceptive type practices, Defendants apply the name, title, and domain in connection to their objectives.

**< . . . / calendar-call . . . / >**

**Above:** Illustrative of Defendant's domain name. Domain names are confusingly similar to the Plaintiff's domain <u>and</u> to the Plaintiff's Registered Mark in connection to the product.

**276.** Defendants did not use other methods available to reference content and for pointing to the content of Defendants applications, and spreading online across the internet to cross-reference other program applications to Defendants' application (app). Defendants gain advantage and revenue over the Plaintiff's use of the name called, "Calendar Call".

**277.** Closed and open loop search results in references pointing to

Defendants' misuse of Plaintiff's Registered Mark. More than one program application could be used and each search application and site will unfairly result in the same discovery thereof. Misleading others to Defendants' misuse.

**278.** As a result names and the Registered Mark in use, misuse, and the names are made available to advertisers, sponsors, consumers, prospects, among other revenue sources and resources. Defendants' action caused, and continued to cause, confusion on Plaintiff Kaniadakis' identified by the U.S. Trademark as the single source to go to in connection to his U.S. Trademark and product designation.

**279.** Defendants, after being notified about these facts and legal Right as alleged in complaint, continued the unlawful practice and publishing content in connection to their sources and misuse of "Calendar Call".

**280.** Defendants acted in bad faith intent as Defendants continued to wrongfully profit and to wrongfully gain material advantage as a result of goodwill associated with Plaintiff Kaniadakis' Registered Mark. Compounding Defendants' wrongful, unlawful, and intentional acts included the act of creating a confusingly similar online reference point. Defendants' made a commercial 'plug'. The plug is essentially an internet

linking point. Defendants' commercial plug act is acting to further gain advantage over Plaintiff's intellectual property. Defendants advertise content and plug the misuse taking full advantage of Plaintiff's Registered Mark. Defendants' use of plugs, or 'permalinks' and slugs thereby have the likelihood to cause false representations, misleading and confusing results with the general public and other commercial markets.

**281.** Plaintiff Kaniadakis' Registered Mark, the name in use in connection to his product, and had used the name "anywhere prior use" including, but not limited to, domain name ownership with variations including "calendar, callendar, callndr" and others long before Defendants use of the domain name, permalink, slug, plug was in use and in connection to Defendants' misuse and alleged intent.

**282.** Plaintiff has been harmed by Defendants' pattern and course of conduct or practice as alleged above in an amount not yet completely known.

## PRAYER FOR JUDGEMENT WITH RELIEF AND INJUNCTIVE RELIEF SOUGHT

**WHEREFORE,** Plaintiff requests This Court to award entry of judgment against Defendants with relief in favor of Plaintiff as follows:

**1.** Permanent injunctive relief against the acts and in light of any merits of Plaintiff's trademark infringement, unfair competition, Lanham, common law, other unlawful or bad acts and This Court's judgment as to Defendants' background, education and experience with knowledge and willfulness acting with unlawful intent of Defendants complained of herein, restraining Defendants, their officers, agents, servants, employees, attorneys, and all those in active and/or past concert or participation with them from:

**a.** Marketing, distributing, further making, selling, purchasing, offering for sale, or otherwise disposing of program applications (app) related to content in connection to acts of trademark infringement, representations, misrepresentations, false representations, use, misuse, unfair competition, by Defendants complained of herein;

**b.** Engaging in content which is including "Calendar Call" name in any unauthorized manner;

**c.** Making any false statement, description, or representation, misrepresentation to suggest that Defendants are in any way affiliated with or sponsored by the Plaintiff's source and/or Plaintiff;

**d.** Making any false statement representation, misrepresentation to

suggest to sponsors, advertisers, material to commercial and non-commercial enterprise, incorporations, companies, entities, individuals in connection to event and content thereof are in any way affiliated, licensed, connected, associated, with or sponsored by the Plaintiff's source and/or Plaintiff;

**e.** Making any false statement, description, or representation, misrepresentation to suggest that Defendants had removed and/or will remove any/any content discovered at any time in connection to "Calendar Call";

**f.** Further developing, presenting, teaching, promoting, advertising, marketing, distributing, further making, importing, exporting, selling, purchasing, offering for sale, or otherwise disposing of program applications (app) related to content in connection to any trademark related to and describing representations, misrepresentations, false representations, use, misuse, unfair competition to the source and/or Plaintiff, by Defendants complained of herein;

**g.** Engaging in any activity which may interfere with Plaintiff and/or the Plaintiff's source, business relations or contracts, including technology which may bear resemblance, likeness, confusing the

Plaintiff's source;

**h.** Engaging in any activity in the next 17 (seventeen) years which Plaintiff Kaniadakis deems may compete with the Plaintiff's source;

**i.** Effecting assignments, transfers, forming new or different entities, associations, companies, incorporations, organizations, individual covenant, making or using device for purpose which may circumvent or cause circumvention or otherwise avoiding prohibitions set forth in subparagraphs a through e;

**j.** Destroying or disposing of any information or evidence of Defendants' branding and unauthorized branding, development material to any otherwise generic program applications, including Defendants' actions or acts set forth in subparagraphs a through e;

**k.** Deem Defendant VERIZON, *et al.* (AOL, TECHCRUNCH, INCs) responsible percentage role in participation with any/all Defendants' participants of acts in this scheme complained herein, a through e;

**l.** Deem Defendant SAP, *et al.* (CONCUR, INCs *et al.*, employees, individuals) percentage responsibility role in participation with any/all Defendants' participants of acts in this scheme complained herein, a through e;

**m.** Deem aiding, abetting, or contributory acts set forth with any/all Defendants' participants of acts complained herein, a through e;

**2.** Awarding to Plaintiff damages pursuant the full extent of the law of no less than that stated amount Plaintiff had demanded of violators for intellectual property related acts and infringement $532,299.00 (five-hundred thirty two two-hundred ninety nine dollars and no cents) per year, royalty or license fees and price which represents Defendants' economy level, basic entry enterprise level license amount, with three (3) year term limit, for the intellectual property license, totaling the three (3) years in the amount of $1,596,897.00 per license term (one million, five hundred ninety six thousand, eight hundred ninety seven dollars and no cents), renewed December, 2016, and Defendants had been notified prior to renewal, with Defendants' continued content displayed, which is to add another license term, totaling the amount of $3,193,794.00 (three million, one hundred ninety three thousand, seven hundred ninety four dollars and no cents).

**3.** Awarding to Plaintiff from Defendants, as a result of Defendants' unauthorized acts, use or misuse, misrepresentations, abuse, of Plaintiff's "Calendar Call" mark, three times Plaintiff's damages and three times

Defendants revenues including event connected ongoing content advertising moneys with corporate "sponsors" and other commercial content advertisements after an accounting, pursuant to **15 U.S.C. §§ 1114(2)(a)(D)**(*to wit* Defendants violating **§§1125(a)(d)(2)** and Defendants in violation as publishers, respectively), and **§§1117(a)(d)(e),** *except for subsections* **(a)** and **(d)**, statutory damages pursuant to **§1117(d)** to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just, and Plaintiff begs This Court to Order treble damages against Defendants' acts as Defendants have been given written constructive notices sent from the Plaintiff by U.S. Certified mail with Return Receipts to the Defendants.

**4.** Awarding to Plaintiff from Defendants, as a result of Defendants' allegations for implementing an unlawful act with U.S. Copyright Act, if the Court deems appropriate given the Defendants' acts allegedly perpetrated in complaint, awarding to Plaintiff damages or, at Plaintiff's election, statutory damages pursuant to, but not so as to limit, **17 U.S.C. §504 (3)** (Defendants engaging in domain name and an act of trademark infringement), the full extent of the law of no less than seven hundred and

fifty dollars ($750.00) nor more than thirty thousand dollars ($30,000.00), per Defendants' unlawful act at This Court's discretion, or This Court find that such an act in light of merits of trademark infringement, and aside from the Plaintiff's merits of trademark infringement, Defendants' acts as willful, award statutory damages of up to One Hundred Fifty Thousand Dollars ($150,000.00) for each act and/or that stated amount Plaintiff had demanded of violators for intellectual property related acts and trademark infringement by Defendants' acts.

**5.** An award of damages sufficient to compensate Plaintiff for the injury suffered as a result of Defendants' acts complained of herein.

**6.** Punitive damages.

**7.** Prejudgment interests.

**8.** Curative advertising;

**a.** Ordering Plaintiff's links in connection to his labeled product identity or product source indefinitely, in legible 18 point size type, at least the point size as captions and headers applying the name "Calendar Call" on Defendants' website, removing Defendants' website content;

**b.** Ordering all advertising revenues after Defendants' comply with

subparagraph 8 to be paid indefinitely by wire transfer transactions directly from promotions, vendors, sponsors, other commercial advertisers to Plaintiff by the first day of each month.

**9.** Ordering Defendants, recognizing their "First Amendment Right" to report, however, to hold accountable to accurately report and publish a public apology and report this to all their visitors, readers and viewers and all others on TECHCRUNCH, on AOL and on SAP for including, but not limited to, the laws under anti-cybersquatting act (cyber piracy prevention) containing the name among other acts in connection to publishing reports and claims causing false unofficial reports, damaging, libelous actions, defaming, unsubstantiated, fake and misleading news about Plaintiff's product source engaging with Defendants' misleading content as;

**< . . . / calendar-call . . . / >**

https://techcrunch.com/video/**calendar-call**/518803559/

**10.** Directing such other relief and/or damages as This Court may deem appropriate to prevent the public records from gaining the erroneous impression caused by Defendants' acts that Defendants' conduct was in some connection to the Plaintiff and Plaintiff's source of intellectual

property and official registration certificates available in the public domain.

**11.** Directing that Defendants and all participants to deliver for Plaintiff's discretion all program application source code and binary run time files in connection to Defendants' "Calendar Call" app, as well as any unauthorized content, videos, server connections, full and complete list with contact information of all firms, companies, incorporations, sponsors, advertisers, and commercial marketing in reference to the content and video, or other material in Defendants' possession previous to and after bearing the "Calendar Call" name was published.

**12.** Directing Defendants and all participants in the act to assign and to transfer to Plaintiff all intellectual property rights in connection to content "Calendar Call", including but not limited to, all intellectual property Defendants may have claimed or could claim and all Copyright Rights.

**13.** Directing Defendants to provide a clear and binding statement to make no claim to common law, trademark, service mark, or patent rights at any time in the future that Plaintiff may deem will further cause Plaintiff's rights to become compromised at any time or officials belief interfere with Plaintiff's rights to any and all ownership in the relatedness of the technology space, and regardless of different classifications claims.

**14.** Directing that Defendants report to This Court and within thirty (30) days after a Permanent Injunction or other relief This Court deems is entered to show their compliance with subparagraphs 2 through 8, or subparagraphs in 1 through 8.

**15.** Awarding to Plaintiff damages resulting from Defendants' tortious interference, breach of contract, misrepresentations Plaintiff's business relationships and co-Defendants as in the complaint.

**16.** Awarding to Plaintiff reasonable investigative fees, attorney's fees, costs, expenses, pursuant to **15 U.S.C. §§1117(a), 1117(d) and 17 U.S.C. §505** in light of Defendants' willful acts or as set forth with **subparagraphs 3 and 4**, Defendants' acts in light of Plaintiff's constructive notices.

**17.** Directing **Title 17 USC § 502(b)** Remedies for infringement: Injunctions; Directing yet, notwithstanding to offsetting damages against Defendants with provisions set forth in complaint with **17 U.S.C. §504 (3)** (Defendants engaging in domain name and an act of trademark infringement). Directing still yet, in an alternative theory, added injunctions should This Court findings of fact and law so support Defendants' position(s) with a point-of-view of Defendants' purported

allegations made in complaint that act for acts of implementing actions U.S. Copyright Act under DMAC and take down Notice can be an acceptable instrument for the parties captioned, can be lawful or otherwise deemed an acceptable action for the parties to take, Plaintiff respectfully requests and begs to move for This Court to so Order relief as lawfully provided including but not limited to law under **17 USC § 502(b)**.

**18.** Upon information and belief, the weight of illustrative documents Defendants' alleged intent "to remove" Plaintiff's claims about infringing concerns. Defendants' said intent could be obviated by complaint's currently attached Exhibits, material representations, evidence, documentation, prima fascia, and so Order Defendants to cease and desist Defendants' publications and Defendants' other acts involving Plaintiff's U.S. Trademark find Defendants' said intent "to remove" with This Court ruling enjoin Plaintiff's plea for some Injunctive relief sought by the Plaintiff. Therefore, for the sake of the parties allegedly each in practice of good will, good intent, good faith This Court provide by way of Injunction for lack of a corresponding statutory U.S. Trademark immediate action (as DMCA for U.S. Copyright) This Court find in favor of Plaintiff awarding his Injunction remedy or relief.

**19.** Directing damages, should any Court find that Defendants and/or another person at any time willfully attempted or attempts to counterfeit mark in connection to goods or product source Defendants, statutory damages of not more than $1,000,000.00 per trademark per type of good sold or distributed.

**20.** Directing Defendants' in part and/or in whole some sum (%) percentage Defendants' accountable, which may include civilly culpable, participating roles and accountable responsibilities in committing act(s) at This Courts' discretion; **a.** That This Court's rulings and so Order in favor of Plaintiff from any and all Defendants' part and role in committing act(s) charged alone, together, and/or apart each act that This Court finds as discretionary allowed; **b.** That this Court finds any act(s) which have been set forth in complaint that This Court finds and so Order its ruling in favor of Plaintiff.

**21.** Awarding to Plaintiff expenses, fees and costs in bringing this action.

**22.** Directing other such relief to Plaintiff as This Court deems just.

Dated this _____day of ________________, **2017.**

Respectfully Submitted,

**/s/Steven J. Kaniadakis_________**
Steven J. Kaniadakis

*Pro se*
stevenkdpm@yahoo.com
2895 64th Avenue South
St. Petersburg, FL 33712-5554
Telephone: 727-871-9999
Pro se, Plaintiff